## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                No. Cr. 15-0205 JH

RAYMOND CASTILLO,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

On February 27, 2015, Defendant Raymond Castillo filed a "Motion for Disclosure of Identity of and Information about Informant[s] and or Sources of Information" (ECF No. 90). The Court, having considered the motion, briefs, arguments, relevant law, and otherwise being fully advised, concludes that Defendant's motion to disclose the informants' identities should be granted to the limited extent that this Court will hold a sealed, transcribed, *ex parte*, *in camera* hearing to consider the relevance of the testimony of the informant(s) who played an active role in the charged crimes in order to determine whether disclosure is warranted under *Roviaro v. United States*, 353 U.S. 53 (1957). The Court will reserve ruling until after the hearing on the disclosure of the identity of any such informant(s) who played an active role in the charged crimes. In all other respects, the motion will be denied for the reasons described herein.

## I.    FACTUAL BACKGROUND

### A.    Surveillance Video of the Wal-Mart Robbery (Counts 1-5)

According to the United States, surveillance video from the Wal-Mart store in the early morning hours of October 28-29, 2014, shows that the robbery at issue occurred at

approximately 12:03 a.m. and took less than one minute to complete. Defendant Castillo asserts that the robbers wore masks and clothing that completely hid their physical appearance, and thus, that another witness or piece of evidence aside from the video is necessary to identify each defendant's alleged role in the robbery. For clarity and ease, the Court will set forth those facts that the Government proffers is captured by the video and use the identifications proffered by the Government to differentiate among the masked individuals in the surveillance video. The Court is aware, however, that the parties dispute the Government's identifications, that the surveillance video does not alone establish the identities of the robbers, and that these are mere allegations. Given the moving Defendants' argument that only an informant could have provided the identifying information to the Government, understanding the allegations and proffers of the Government is important in the analysis of whether disclosure of the identities of the informants is necessary under the law.

The video shows Frank Gallegos inside the store in the checkout line prior to the robbery.[1] The checkout line was the same line where the employees had the safe and where they were picking up money from the register. Frank Gallegos talked on his cell phone, left the checkout line with his shopping cart, and, at approximately 12:01 a.m., walked away from the area of the safe with his cart while talking on his phone.

At 12:02 a.m., the video shows three individuals lying down in the bed of a pickup truck as the truck pulled up to the general merchandise doors of the Wal-Mart. The Government contends these three individuals are Henry Lujan, Reyes Lujan, and Daniel Maestas. The video shows these three individuals jump out of the bed of the truck as another individual, who the

---

[1] It appears that Frank Gallegos was not wearing any type of face covering and was identified by police following the incident. *See* Criminal Complaint – Arrest Warrant Affidavit 3, ECF No. 155-1. Mr. Gallegos does not appear to contest that he was inside the Wal-Mart at the time of the robbery. *See* Def. Frank Gallegos' Mot. for Severance 5, ECF No. 108 ("[T]he only evidence against Mr. Gallegos is the surveillance film from Walmart's security cameras, which depict Mr. Gallegos walking in the store, pushing a shopping cart containing items.")

Government asserts is Raymond Castillo, exits the passenger's side door of the truck with a black semiautomatic pistol in his hand. The individual the Government asserts is Daniel Maestas was the last to exit the bed of the truck, and he removed a silver or chrome handgun from his pocket with his left hand. The Government further contends that Johnny Ramirez was the driver of the truck.

The individuals attempted to enter the store, unaware the doors had been locked. Once they realized the main doors would not open, Henry Lujan ran toward the grocery side entrance of the store, followed by the three others. Henry Lujan and Raymond Castillo encountered a security guard as they approached the grocery entrance, and Raymond Castillo forced the security guard into the store at gunpoint. Henry Lujan and Raymond Castillo entered the Wal-Mart at approximately 12:03 a.m. and they exited the Wal-Mart with the safe about 35 seconds after entering the store. Daniel Maestas and Reyes Lujan acted as lookouts outside of the Wal-Mart. Henry Lujan pushed the safe out of the store while Raymond Castillo held employees and patrons at gunpoint. The two struggled while attempting to load the safe into the pickup. Reyes Lujan then began to help load the safe into the back of the truck.

Raymond Castillo pointed his firearm in the direction of the security guard. A frame-by-frame viewing of the surveillance video shows what appears to be a spent shell casing above and to the rear of the slide of his firearm at approximately 12:03:42 a.m., a direction consistent with the direction a casing will travel when ejected from most semiautomatic pistols after having been fired. Daniel Maestas also approached the truck with a firearm in his left hand. The Government asserts that the only individuals with the opportunity to fire the shots were the men they identify as Raymond Castillo and Daniel Maestas because Henry Lujan and Reyes Lujan were struggling with the safe and did not have firearms in their hands.

After the safe was loaded into the truck, Raymond Castillo and Henry Lujan jumped in the back of the pickup with the safe, while Reyes Lujan and Daniel Maestas entered the passenger compartment of the pickup. The truck then left at a high rate of speed. One money bag fell from the safe as the two individuals in the back of the truck saved the safe from falling out of the bed of the truck.

At 12:03 a.m., Frank Gallegos, without his shopping cart and no longer on his cell phone, looked toward the area of the robbery while employees and customers ran away from that area. At approximately 12:05 a.m., he exited the store nonchalantly, while appearing to text on his cell phone.

**B.     Government's Additional Proffer of Facts about the Wal-Mart Robbery**

The Government alleges it has evidence that, prior to the commission of the October 29, 2014 robbery of the Wal-Mart, the defendants planned the robbery at Daniel Maestas' home, and all the defendants except for Frank Gallegos were present during the planning.

The United States further alleges that it has evidence that Frank Gallegos rode to the Wal-Mart in the truck used in the robbery. *See* United States' Resp. to Def. Frank Gallegos' Mot. for Severance 2, ECF No. 117. The Government contends that his role was to observe the Wal-Mart employees make deposits from the cash registers to the rolling safe and to communicate with the robbers about when the safe was full of money, but before it had been moved away from the front of the store. *See id.* The Government asserts that Frank Gallegos was recruited for the role after a woman, who was performing that function, left the store and ceased to perform that role. *Id.*[2] The Government intends to prove that Frank Gallegos communicated with Raymond Castillo on the cell phone. *Id.*

---

[2] In the Criminal Complaint – Affidavit for Arrest Warrant of Frank Gallegos, Albuquerque Police Department Detective Geoffery Stone states that the Source of Information identified the woman acting as the initial lookout as Defendant Castillo's girlfriend. *See* Criminal Complaint – Arrest Warrant Affidavit 2, ECF No. 155-1.

The Government asserts that, after the truck left the Wal-Mart, the robbers fired rounds into the safe to open it while traveling to the area of Chico and General Chennault in Albuquerque, where they attempted to get more of the money out of the safe. They left the safe and truck on the side of the road near Chico and General Chennault.

C.      Surveillance Video of the 7-Eleven Robbery (Counts 6-7)

At around 2:30 a.m. on December 7, 2014, an armed robbery occurred at the 7-Eleven convenience store at 1111 Lomas Blvd., NW, in Albuquerque. Based on the surveillance video obtained from near 1111 Lomas Blvd., a white four-door sedan parked in the alleyway behind the 7-Eleven store. An individual in a grey sweatshirt, who the Government asserts is Reynaldo Marquez, exited the sedan and the sedan drove to the front side of the 7-11. *See* United States' Resp. to Mot. for Disclosure 5, ECF No. 100; United States' Resp. to Def. Frank Gallegos' Mot. for Severance 5, ECF No. 117. The driver, who the Government asserts based on later identification as Raymond Castillo, exited the car, entered the store, purchased some items, exited the store, and then returned to the driver's seat of the sedan.[3]

Reynaldo Marquez again exited the front passenger's seat of the sedan and entered the 7-11 wearing the hood of the sweatshirt over his head and a red bandanna covering his face, and holding what ballistics later determined to be a .45 caliber semiautomatic pistol. *See* United States' Resp. to Mot. for Disclosure 5, ECF No. 100; United States' Resp. to Def. Frank Gallegos' Mot. for Severance 5, ECF No. 117. He pointed the firearm at the clerk behind the counter and jumped over the counter. The clerk then removed the money from the register and gave it to the robber. Another clerk approached Reynaldo Marquez from the store side of the counter, and Reynaldo Marquez then shot the approaching clerk in the torso. Reynaldo Marquez

---

[3] Once again, for clarity and ease, the Court will use the identifications proffered by the Government to differentiate among the individuals in the surveillance video, but the Court understands the identities of the individuals shown on the videos are disputed allegations.

5

jumped back over the counter, exited the store with the money from the register, and entered the white sedan, which departed the area.

## II.     PROCEDURAL BACKGROUND

On December 11, 2014, the United States filed a Criminal Complaint against Raymond Castillo, asserting that he conspired with at least one other person to violate the Hobbs Act that resulted in the armed robbery of the 7-Eleven Store and in the shooting of an employee. *See* Criminal Compl., ECF No. 1.

On January 16, 2015, APD Detective Geoffrey Stone signed a Criminal Complaint – Arrest Warrant Affidavit for Frank Gallegos for the Wal-Mart robbery. *See* Criminal Complaint – Arrest Warrant Affidavit, ECF No. 155-1. Detective Stone attests that on December 23, 2014, he "interviewed a Source of Information (SOI) who actively participated in the armed robbery of the Walmart store on 10/29/2014." *Id.* at 2. He stated that "the SOI had intimate information about the robbery that only someone involved would have known." *Id.* Detective Stone further attested that on December 29, 2014, he interviewed Daniel Maestas' wife, Crystal Maestas, who told him the following: that on the night of the robbery, Daniel met with Raymond Castillo, Johnny Ramirez, Reyes Lujan, Henry Lujan, and Paul Maez at her house; that they all left driving in Paul's white truck and Johnny Ramirez's silver car; that she left to do errands; and that when she returned, the truck was parked in her backyard with a silver box in the back of the truck, which she identified as the safe from the Wal-Mart store. *See id.* at 4.

The United States filed a Superseding Indictment (ECF No. 85) in this case on February 25, 2015. Counts 1-5 arose from the robbery of the Wal-Mart while Count 6 charged Raymond Castillo with the December 7, 2014 conspiracy to interfere with commerce by robbery of the 7-Eleven Store. On February 27, 2015, Defendant Raymond Castillo filed a motion for disclosure

of identity of and information about the informants or sources of information used in the investigation that led to the arrest of the defendants in this case. *See* Def. Castillo's Mot. to Disclose 1-2, ECF No. 90. In response to unopposed motions to join Defendant Castillo's motion for disclosure, this Court filed Orders permitting Henry Lujan and Johnny Ramirez to join in Raymond Castillo's motion. *See* Order, ECF No. 98; Order, ECF No. 99. Defendant Reyes Lujan subsequently filed a Notice of Joinder in the Motion for Disclosure (ECF No. 90). Notice, ECF No. 110.

On May 28, 2015, the Government filed a Second Superseding Indictment (ECF No. 112). In Count 1, the United States charged Raymond Castillo, Daniel Maestas, Johnny Ramirez, Frank Gallegos, Reyes Lujan, and Henry Lujan with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a) arising from the October 29, 2014 Wal-Mart robbery. In Count 2, the Government charged the same six defendants with interference with interstate commerce by robbery and violence arising from the October 29, 2014 theft of a safe filled with currency and other valuables from a Wal-Mart by threatening the employees with firearms in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2. The Government charged Raymond Castillo in Count 3 with using, carrying, and brandishing a firearm during and in relation to a crime of violence, to wit, the October 29, 2014 conspiracy and interference with interstate commerce by robbery of the Wal-Mart, in violation of 18 U.S.C. § 924(c). The United States asserts in Count 4 that Daniel Maestas used and carried a firearm during and in relation to a crime of violence, to wit, the October 29, 2014 conspiracy and interference with interstate commerce by robbery of the Wal-Mart, in violation of 18 U.S.C. § 924(c). In Count 5, the Government charged Johnny Ramirez, Frank Gallegos, Reyes Lujan, and Henry Lujan with knowingly aiding and abetting the using and carrying of a firearm during and in relation to a crime of violence for the October 29,

2014 conspiracy and interference with interstate commerce by robbery of the Wal-Mart, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2.

In Count 6, the United States charged Raymond Castillo and Reynaldo Marquez with interference with interstate commerce by robbery and violence arising from the December 7, 2014 taking of currency from the presence of employees at the 7-Eleven store, against their will by means of actual and threatened force with a firearm in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2. Second Superseding Indictment 3, ECF No. 113. In Count 7, the Government charged Reynaldo Marquez with knowingly using, carrying, brandishing, and discharging a firearm during and in relation to the December 7, 2014 interference with interstate commerce by robbery. *Id.* at 4. The United States, however, has since agreed to sever trial of Counts 6 and 7. *See* United States' Resp. to Def. Gallegos' Mot. to Sever 6, ECF No. 117; United States' Resp. to Def. Reyes Lujan's Mot. to Sever 6, ECF No. 132.

## III.    ANALYSIS

In the motion to disclose information on the Government's informants, Defendant Castillo alleges that the informant could be more culpable than any of the charged defendants and that the requested information is necessary to prepare his defense under *Roviaro v. United States*, 353 U.S. 53 (1975), *Kyles v. Whitley*, 514 U.S. 419 (1995), *Brady v. Maryland*, 375 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). Defendant Castillo moves to disclose, among other things, the informants' identities; whether they were working for any government agency; their criminal histories or other misconduct; information regarding their credibility and mental and physical health; their employment, education, and marital histories; and particularized information regarding the informants' involvement in the case. *See* Def. Castillo's Mot. to Disclose 2-3, ECF No. 90.

Although the Government acknowledges use of confidential sources of information in its investigation, including one that played a more active role in the robbery, the Government opposes the motion to disclose. The United States asserts that the information from informants is wholly inculpatory, that none of the informants were working for the government then or now, and that the informants told police what happened *after* the robberies occurred. The Government asserts that "at least one confidential source of information did not participate in the robbery, and did not know a robbery had occurred until he/she saw a television news story about the crime." United States' Resp. 7-8, ECF No. 100. The Government contends that the motion should be denied entirely because the moving Defendants have not met their burden of showing how the information of the confidential sources of information would be helpful for their defense. Alternatively, the Government argues that, if the Court has questions about whether the informants have information that would be relevant and helpful for the defense, the Court should conduct an *in camera* review of material provided by ATF or conduct an *in camera* interview of the confidential informants.

The Court will first examine whether disclosure is required under *Roviaro* before turning to whether the information should be provided under *Brady/Giglio*.

### A.     Disclosure of informant identities under *Roviaro*

The government has a privilege to withhold from disclosure the identity of informants in order to protect the public interest in effective law enforcement.  *Roviaro*, 353 U.S. at 59.  "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.*  The scope of the privilege is limited.  *Id.* at 60. For example, contents are not privileged where they will not reveal the identity of the informer,

and the privilege does not apply once the identity of the informer has been disclosed to those who have cause to resent the communication. *Id.* Similarly, where "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. To determine whether the privilege applies, the court must balance the public interest in protecting the flow of information necessary for effective law enforcement against the defendant's right to prepare his defense. *See id.* at 62. The court should consider the particular circumstances of the case, including the crime charged, the possible defenses, and the possible significance of the informer's testimony. *See id.* (concluding court erred in permitting government to withhold identity of informer where informer was sole participant, other than accused, in transaction and another witness testified that informer denied ever before having seen accused).

The Tenth Circuit has described the balancing of interests as follows:

> [C]ases involving confidential informants fall into several broad categories. At one extreme are the cases where the informant is a mere tipster, and disclosure is not required. At the other extreme are cases such as *Roviaro* itself where the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial. In addition, there are cases where there is a slight possibility a defendant might benefit from disclosure, but the government has demonstrated a compelling need to protect its informant.

*United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992) (quoting *United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990)). While an informant's identity should be disclosed if it might be relevant to the defendant's case and justice would best be served by disclosure, an informant need not be disclosed where the informer's information is merely cumulative or where the informant did not participate or witness the crime in question. *See United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1000-01

(10th Cir. 1992) (citing *United States v. Reardon*, 787 F.2d 512, 517 (10th Cir. 1986)).  "When it is clear the informant cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure."  *Martinez*, 979 F.2d at 1429.

A defendant seeking disclosure has the burden of proof to show a need for the disclosure. *United States v. Sinclair*, 109 F.3d 1527, 1538 (10th Cir. 1997); *Martinez*, 979 F.2d at 1426. Mere speculation about the usefulness of an informant's testimony, however, is insufficient to compel disclosure. *Mendoza-Salgado*, 964 F.2d at 1001. A court may use an *in camera* proceeding to review the record to determine the degree of involvement of the informant and whether it is possible the defendant might benefit from the disclosure of the informant's identity. *See Moralez*, 908 F.2d at 568-69.  The *in camera* hearings may be transcribed and sealed to permit meaningful review while retaining limited disclosure. *See id.* at 569.

Defendant Castillo contends that in a criminal complaint filed in the state case involving this same robbery, Albuquerque Police Officer Geoffery Stone stated, "I interviewed a Source of Information (SOI) who actively participated in the armed robbery." Def. Castillo's Mot. to Disclose 8, ECF No. 90. Defendant Castillo argues that this informant almost certainly is a participant or instigator and is the sole source of identification of the six co-defendants, and thus this high level of involvement creates a greater need for identification. Moreover, Defendant notes that, to date, the Government has not provided in discovery a single witness statement of an identifiable source, or any other type of evidence, linking Defendant Castillo to this crime. Defendant Castillo argues that the source of identification of each defendant's alleged specific role in the crime is based on the information of informants whose disclosure is necessary to allow him to adequately prepare for trial. Defendant Castillo further contends that, as for the

basis of Count 3 and the discharge of the firearm, the Government acknowledges that both Raymond Castillo and Daniel Maestas had the opportunity to fire shots. If the Government is relying on the statements of an informant to identify Raymond Castillo as the shooter in Count 3, Defendant argues that the statements of the informant might be exculpatory as to this particular allegation, and thus, should be disclosed.[4]

The Government asserts that one confidential informant was a mere tipster who did not participate in or witness the crime. Defendant Castillo has not provided a possible defense, explained how the information of the tipster would be relevant to his defense, or explained the significance of the information possessed by the passive informant. Instead, Defendant Castillo's motion emphasizes that the more active the participation of the informant, the greater need for identification. The Government has affirmatively stated that its "tipster" informant does not have exculpatory information and that this informant was not used prior to or since the robbery, other than taking a statement from him/her. The moving Defendants have not met their burden of showing that the disclosure of the confidential informant who was not a participant in the crime is required under *Roviaro*. *Cf. United States v. Wynne*, 993 F.2d 760, 766 (10th Cir. 1993) (holding that citizen-informer who is victim of or witness to criminal conduct and thereafter relates to police what s/he knows as a matter of civic duty is not a government informant whose identity must be disclosed under *Roviaro*); *United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993) ("Where, as here, the informant was not a participant or witness to the crime, this court has consistently held that the identity need not be disclosed."); *Martinez*, 979 F.2d at 1426 ("At one extreme are the cases where the informant is a mere tipster, and disclosure is not

---

[4] Notably, in Count 3 of the Superseding Indictment, the Government charged Defendant Castillo with having "knowingly used, carried, brandished, and discharged a firearm." Superseding Indictment 2, ECF No. 85. The Second Superseding Indictment, however, dropped the "discharged" allegation and asserts Defendant Castillo "knowingly used, carried, and brandished a firearm." Second Superseding Indictment 2, ECF No. 113.

required."). *See also United States v. Tolliver*, 569 F.2d 724, 729 (2d Cir. 1978) ("The reason for recognizing the so-called 'informer's privilege' of the Government is not merely to preserve the informant for unexposed recurrent employment, but also to protect his life. The latter consideration may be as true of an eyewitness to a crime of violence who, aside from the actual danger to his life if exposed early, may also, in such circumstances, die a thousand deaths before the trial, and come to see a menacing figure in every shadow."). The Court will therefore not require the disclosure of the identities of the informants used by the Government who did not participate in the charged crimes.

The United States, however, also acknowledges that it has at least one confidential informant who "may have played a more active role in the robbery of the Walmart." United States' Resp. 8, ECF No. 100. Although "disclosure of an informant is not required simply because the informant has taken an active role in the criminal transaction," *Martinez*, 979 F.2d at 1428, active participants who played a crucial role in the alleged criminal transaction such that disclosure and production of the informant are required to ensure a fair trial represent the other end of the *Roviaro* spectrum, *id.* at 1426.

The United States argues that disclosure in this case is not warranted, as in *Roviaro*, because here the informants were not working for the government when the robbery occurred, are not employed by the government to this day, and are merely people who, after the robberies, sat down with detectives and told them what happened. *See* United States' Resp. 7, ECF No. 100. The Government appears to suggest that an individual who speaks with police after the crime, but not beforehand, does not fall within the scope of *Roviaro*.

The Tenth Circuit in *United States v. Miller*, 499 F.2d 736 (1974), clarified the meaning of "informer" in the *Roviaro* context. In *Miller*, the defendant had moved for the disclosure of

the identities of the government's informants, and the court denied his request after the government asserted there were no informers. *Id.* at 740-41. At trial, a government witness, Burl Gene Maret, testified that he voluntarily contacted law enforcement about what he saw regarding the crime in question, and the defendant moved to strike his entire testimony, arguing that Maret was an informer, contrary to the representations of the government. *See id.* at 739, 741. The trial court refused to strike the testimony, and the Tenth Circuit upheld the decision. *See id.* at 739-42. The Tenth Circuit noted that "[g]enerally, the cases involving the use of informers are concerned with the government's privilege to withhold the identity of a paid government agent." *Id.* at 741 & n.2 (explaining that, in *Roviaro*, the alleged informer was an undercover employee who actively participated in the narcotics transaction). The Tenth Circuit then explained:

> We … conclude … that the witness Maret cannot be considered an 'informer' as that term has been defined in any of the cases.
>
> The voluntary submission of information or report of a crime to a government agency does not, without more, make an individual an informer, in the absence of some connection between the individual and the government agency. *To be an informer the individual supplying the information generally is either paid for his services or, having been a participant in the unlawful transaction, is granted immunity in exchange for his testimony.* In the case at bar, there is no showing that the witness Maret was in complicity with the authorities. He was not in their employ. He may have hoped for advantage, but no such agreement was demonstrated.
>
> Although the appellant sought to establish that the witness Maret had set him up, so to speak, he was unable to accomplish this. The trial court ruled that the government in the case at bar was not obligated to disclose Maret's identity. Our view is that there is no obligation to identify Maret as an informer because it does not appear that in the usual understanding of that term he occupied such a position.

*Id.* at 741-42 (internal footnote omitted and emphasis added).

Consequently, although the Government correctly suggests that not all people who speak with police after a crime occurs are considered "informants" within the meaning of *Roviaro*, the

*Miller* case indicates that an active participant in the crime, who speaks with police after the crime occurred, may constitute an "informant" subject to *Roviaro* when that participant receives immunity or some other personal advantage or vindication from the government. *See id.* at 742 & n.3. The Court, based on the record before it, is unable to exclude the informant who actively participated in the crime from the dictates of *Roviaro* based solely on the Government's proffer of the timing of the informant's disclosures to law enforcement.

The United States also asserts that this Court should deny the request for disclosure, including any *in camera* hearing, because the moving Defendants did not articulate any defense for which the confidential sources of information are the only witnesses, or any defense whatsoever. The Government argues that the informants possess wholly inculpatory information. The Court acknowledges that, other than for Count 3, Defendant Castillo has not been very specific as to the defense for which the testimony of the confidential informants would be useful. Instead, the moving Defendants contend that the disclosure is essential to a fair determination of the cause because the informant's testimony appears to be the main or only evidence linking them to the charged crimes.

Based on the limited record before it, the Court cannot determine whether the information sought from the active participant informant would be merely cumulative or whether the informant who played an active role in the alleged conspiracy and robbery has information essential to the defense regarding whether each defendant was involved in the planning and robbery. Nor has the Government provided any reasons for withholding disclosure of the informant, beyond the general purposes underlying the privilege to protect informants. Given the Government's acknowledgement that one of the informants may have played an active role in the robbery, which is a significant factor in the requisite analysis, the prudent course is to hold a

sealed, transcribed, *ex parte*, *in camera* hearing to determine whether the participant is an "informer" within the meaning of *Roviaro*; if so, where on the *Roviaro* spectrum the information from the informant lies; and whether the information possessed by the informant might aid in the defense. *Compare Moralez*, 908 F.2d at 568 (holding that court should have held *in camera* proceeding to determine degree of involvement of confidential informant, despite fact that informant was not present at scene at time of arrest, because he/she appeared to have witnessed at least the preparations of the crime and saw a co-defendant in possession of the truck used to transport the drugs, and his/her testimony was only testimony that could support defendant's theory that he was not involved in drug operation at all, but was only in the wrong place at the wrong time)[5]; *Gaines v. Hess*, 662 F.2d 1364, 1368-69 (10th Cir. 1981) (holding that *in camera* hearing was appropriate vehicle to determine whether informant's testimony would lend credence to defense – that petitioner was not person who sold drugs to the officer – where informant set up drug transaction and was only witness to sale other than officer and seller), *with United States v. Gordon*, 173 F.3d 761, 767-68 (10th Cir. 1999) (disclosure not required where mere tipster had limited information and was not present during commission of offense); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1000-01 (10th Cir. 1992) (disclosure not required where informer did not participate in actual sale of cocaine).

The Government requests that, if the Court has questions about the relevance and usefulness to the defense of the informant's information, the Court should conduct either an *in*

---

[5] The Government also argues that the moving Defendants have not articulated a defense for which the informants are the only witnesses, as this case involves multiple participants. In *Moralez*, however, the informant was not the sole witness regarding the defendant's role in the charged crime. The Tenth Circuit explained that defense counsel contended the "informant's testimony would provide a different perspective" than the testimony of a co-defendant and brother-in-law, both of whom counsel argued had motives for implicating the defendant, and thus, the Tenth Circuit ultimately determined the district court should have considered in an *in camera* hearing whether the informant could impeach these other witnesses' testimony about the defendant's involvement, warranting disclosure. *See Moralez*, 908 F.2d at 568. It is unclear based on the current record whether the moving Defendants will be able to put any other witnesses on the stand, other than an informant, to support their defense.

*camera* review of material provided by the ATF and/or an *in camera* interview of the confidential informant(s). As for the latter proposal, the Government explains that there might be procedural hurdles if the informant(s) invoke their Fifth Amendment rights to remain silent, and thus, in such a situation, the Court should interview the informant(s) while the Government does not participate, so that it cannot use any such statements in a prosecution. In regard to the preferred method of proof, so long as the Government can provide to the Court through the testimony of its agents or materials the information about the Government's relationship to the active participant who supplied information and what s/he has conveyed concerning the charged crimes, the Court will not require the presence of the active participant. If the Government, however, believes the information is best presented through direct testimony, the Court will consider it. The Court will set the hearing in a separate Notice.

> **B.**     ***Brady/Giglio* Information**

Defendant Castillo seeks the following categories of information under both *Brady* and *Giglio*: (1) information regarding the prior use and testimony of the informant to show his/her modus operandi in setting up criminal transactions and inducing others to participate in criminal activity; (2) preferential treatment given and threats made to informant, including money paid and promises of financial reward and plea agreements; (3) informants' arrest and conviction records, unauthorized criminal activity, and other misconduct; (4) personnel files reflecting informants' bad character; (5) information reflecting informant's credibility, mental health, drug use, and other dependency. *See* Def. Castillo's Mot. to Disclose 10-11, ECF No. 90. The Government affirmatively states that the confidential informants do not possess any exculpatory information. Gov.'s Resp. 12, ECF No. 100. If the United States chooses to call a confidential informant as a witness at trial, it states that it will provide all relevant *Giglio* information to the

defendants in advance of trial. *Id.* at 13.

This Court in its Discovery Order has already ordered: "The Government shall make available to the Defendant by the time required by the applicable law all material for which disclosure is mandated by *Brady v. Maryland*, 373 U.S. 83 (1963), by *Giglio v. United States*, 405 U.S. 150 (1972), and by the Jencks Act, 18 U.S.C. Section 3500, and Rules 12(i) and 26.2." Discovery Order 5, ECF No. 67; Discovery Order 5, ECF No. 130. Information subject to *Brady* and *Giglio* is thus already subject to disclosure under an Order of this Court, and thus, Defendants' request for disclosure of information subject to *Brady* and *Giglio* is duplicative and will be denied as moot, subject to the following exception. *See id.* As to potential *Brady* information concerning the informant(s) who played a more active role in the charged crimes, the Court in its *in camera* hearing will consider whether the informant(s) have any such *Brady* information that would aid the moving Defendants in their defense.

**IT IS THEREFORE ORDERED** that Defendant Castillo's Motion for Disclosure of Identity of and Information about Informant(s) and or Sources of Information (**ECF No. 90**), in which Defendants Henry Lujan, Johnny Ramirez, and Reyes Lujan have joined is **GRANTED IN PART AND DENIED IN PART** as follows:

1.     The motion for disclosure is **GRANTED** to the limited extent that this Court will hold a sealed, transcribed, *ex parte*, *in camera* hearing to consider the relevance of the testimony of any informant who played an active role in the charged crimes in order to determine whether disclosure is warranted under *Roviaro* and/or *Brady*. The Court will **RESERVE RULING** on the disclosure of the identity of such informant(s) until after the hearing.

2.     The motion for disclosure of the identity and information concerning the

informant(s) who did not participate in the charged crimes is **DENIED**.

       3.      The request for disclosure of the numerous categories of information based on *Giglio* is **DENIED as MOOT**.

 

 

_____
**UNITED STATES DISTRICT JUDGE**