THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                              No. Cr. 15-0205 JH

RAYMOND CASTILLO,
DANIEL MAESTAS,
JOHNNY RAMIREZ,
FRANK GALLEGOS,
REYES LUJAN,
HENRY LUJAN,
REYNALDO MARQUEZ,

      Defendants.

## MEMORANDUM OPINION AND ORDER

The following motions are before the Court: (1) Defendant Frank Gallegos' Motion for Severance of Defendant Gallegos and for a Separate, Speedy Trial of Counts 1, 2 and 5 (ECF No. 108); (2) Defendant Reyes Lujan's Motion to Sever Counts and/or Defendants (ECF No. 109); (3) Defendant Raymond Castillo's Motion to Sever Defendants and Charges (ECF No. 118); and (4) Defendant Gallegos' Motion to Dismiss Indictment, with Prejudice, for Speedy Trial Act Violation or, in the Alternative, for a Trial within 30 days (ECF No. 152). Defendant Gallegos seeks severance of his case from those of his co-defendants, or alternatively, to order a separate trial of counts 1, 2 and 5 only. He also seeks dismissal of the indictment for violation of the Speedy Trial Act. Defendant Reyes Lujan seeks an order to sever Count 6 from trial with Counts 1-5 based on spill-over prejudice that would occur from trying the unrelated, separate robberies together in a single trial. Defendant Castillo also seeks to sever Count 6 for separate

trial, as well as severing his case from the other defendants based on his Confrontation Clause rights. The Government agrees that Counts 6 and 7 should be severed from Counts 1 through 5, but objects to a separate trial for any of the codefendants charged in Counts 1 through 5. Having considered the motions, briefs, evidence, and applicable law, the Court will grant the motions to sever as to Counts 6 and 7 and will conduct a separate trial on Counts 6 and 7, but will otherwise deny the motions to sever. The Court will also deny Defendant Gallegos's motion to dismiss the indictment and his request for an evidentiary hearing on his motion.

## I.      FACTUAL BACKGROUND

### A.      Surveillance Video of the Wal-Mart Robbery (Counts 1-5)

According to the United States, surveillance video from the Wal-Mart store in the early morning hours of October 28-29, 2014, shows that the robbery at issue occurred at approximately 12:03 a.m. and took less than one minute to complete. For clarity and ease, the Court will set forth those facts that the Government proffers is captured by the video and use the identifications proffered by the Government to differentiate among the masked individuals in the surveillance video. The Court is aware, however, that the parties dispute the Government's identifications, that the surveillance video does not alone establish the identities of the robbers, and that these are mere allegations.

The video shows Frank Gallegos inside the store in the checkout line prior to the robbery.[1] The checkout line was the same line where the employees had the safe and where they were picking up money from the register. Frank Gallegos talked on his cell phone, left the checkout line with his shopping cart, and, at approximately 12:01 a.m., walked away from the

---

[1] It appears that Frank Gallegos was not wearing any type of face covering and was identified by police following the incident. *See* Criminal Complaint – Arrest Warrant Affidavit 3, ECF No. 155-1.  Mr. Gallegos does not appear to contest that he was inside the Wal-Mart at the time of the robbery. *See* Def. Gallegos' Mot. for Severance 5, ECF No. 108 ("[T]he only evidence against Mr. Gallegos is the surveillance film from Walmart's security cameras, which depict Mr. Gallegos walking in the store, pushing a shopping cart containing items.")

area of the safe with his cart while talking on his phone.

At 12:02 a.m., the video shows three individuals lying down in the bed of a pickup truck as the truck pulled up to the general merchandise doors of the Wal-Mart. The Government contends these three individuals are Henry Lujan, Reyes Lujan, and Daniel Maestas. The video shows these three individuals jump out of the bed of the truck as another individual, who the Government asserts is Raymond Castillo, exits the passenger's side door of the truck with a black semiautomatic pistol in his hand. The individual the Government asserts is Daniel Maestas was the last to exit the bed of the truck, and he removed a silver or chrome handgun from his pocket with his left hand. The Government further contends that Johnny Ramirez was the driver of the truck.

The individuals attempted to enter the store, unaware the doors had been locked. Once they realized the main doors would not open, Henry Lujan ran toward the grocery side entrance of the store, followed by the three others. Henry Lujan and Raymond Castillo encountered a security guard as they approached the grocery entrance, and Raymond Castillo forced the security guard into the store at gunpoint. Henry Lujan and Raymond Castillo entered the Wal-Mart at approximately 12:03 a.m. and they exited the Wal-Mart with the safe about 35 seconds after entering the store. Daniel Maestas and Reyes Lujan acted as lookouts outside of the Wal-Mart. Henry Lujan pushed the safe out of the store while Raymond Castillo held employees and patrons at gunpoint. The two struggled while attempting to load the safe into the pickup. Reyes Lujan then began to help load the safe into the back of the truck.

Raymond Castillo pointed his firearm in the direction of the security guard. A frame-by-frame viewing of the surveillance video shows what appears to be a spent shell casing above and to the rear of the slide of his firearm at approximately 12:03:42 a.m., a direction consistent with

the direction a casing will travel when ejected from most semiautomatic pistols after having been fired. Daniel Maestas also approached the truck with a firearm in his left hand. The Government asserts that the only individuals with the opportunity to fire the shots were the men they identify as Raymond Castillo and Daniel Maestas because Henry Lujan and Reyes Lujan were struggling with the safe and did not have firearms in their hands.

After the safe was loaded into the truck, Raymond Castillo and Henry Lujan jumped in the back of the pickup with the safe, while Reyes Lujan and Daniel Maestas entered the passenger compartment of the pickup. The truck then left at a high rate of speed. One money bag fell from the safe as the two individuals in the back of the truck saved the safe from falling out of the bed of the truck.

At 12:03 a.m., Frank Gallegos, without his shopping cart and no longer on his cell phone, looked toward the area of the robbery while employees and customers ran away from that area. At approximately 12:05 a.m., he exited the store nonchalantly, while appearing to text on his cell phone.

**B.      Government's Additional Proffer of Facts about the Wal-Mart Robbery**

The Government alleges it has evidence that, prior to the commission of the October 29, 2014 robbery of the Wal-Mart, the defendants planned the robbery at Daniel Maestas' home, and all the defendants except for Frank Gallegos were present during the planning. *See* United States' Resp. to Def. Frank Gallegos' Mot. for Severance 2, ECF No. 117. The United States further alleges that it has evidence that Frank Gallegos rode to the Wal-Mart in the truck used in the robbery. See id. The Government contends that his role was to observe the Wal-Mart employees make deposits from the cash registers to the rolling safe and to communicate with the robbers about when the safe was full of money, but before it had been moved away from the front of the

store. *See id.* The Government asserts that Frank Gallegos was recruited for the role after a woman, who was performing that function, left the store and ceased to perform that role. *Id*[2] The Government intends to prove that Frank Gallegos communicated with Raymond Castillo on the cell phone. *Id.*

The Government asserts that, after the truck left the Wal-Mart, the robbers fired rounds into the safe to open it while traveling to the area of Chico and General Chennault in Albuquerque, where they attempted to get more of the money out of the safe. United States' Resp. to Def. Reyes Lujan's Mot. for Severance of Counts 2-3, ECF No. 132. They left the safe and truck on the side of the road near Chico and General Chennault. *Id.* at 3.

### C.     Surveillance Video of the 7-Eleven Robbery (Counts 6-7)

At around 2:30 a.m. on December 7, 2014, an armed robbery occurred at the 7-Eleven Store at 1111 Lomas Blvd., NW, in Albuquerque. *See* United States' Resp. to Def. Gallegos' Mot. for Severance 5, ECF No. 117. Based on the surveillance video obtained from near 1111 Lomas Blvd., a white four-door sedan parked in the alleyway behind the 7-Eleven Store. *Id.* An individual in a grey sweatshirt, who the Government asserts is Reynaldo Marquez, exited the sedan and the sedan drove to the front side of the 7-Eleven. *See id.*; United States' Resp. to Mot. for Disclosure 5, ECF No. 100. The driver, who the Government asserts based on later identification as Raymond Castillo, exited the car, entered the store, purchased some items, exited the store, and then returned to the driver's seat of the sedan. *See* United States' Resp. to Def. Gallegos' Mot. for Severance 5-6, ECF No. 117.[3]

---

[2] In the Criminal Complaint – Affidavit for Arrest Warrant of Frank Gallegos, Albuquerque Police Department Detective Geoffery Stone states that the Source of Information identified the woman acting as the initial lookout as Defendant Castillo's girlfriend. *See* Criminal Complaint – Arrest Warrant Affidavit 2, ECF No. 155-1.

[3] Once again, for clarity and ease, the Court will use the identifications proffered by the Government to differentiate among the individuals in the surveillance video, but the Court understands the identities of the individuals shown on the videos are disputed allegations.

Reynaldo Marquez again exited the front passenger's seat of the sedan and entered the 7-Eleven wearing the hood of the sweatshirt over his head and a red bandanna covering his face, and holding what ballistics later determined to be a .45 caliber semiautomatic pistol. *See id.*; United States' Resp. to Mot. for Disclosure 5, ECF No. 100. He pointed the firearm at the clerk behind the counter and jumped over the counter. United States' Resp. to Def. Frank Gallegos' Mot. for Severance 6, ECF No. 117. The clerk then removed the money from the register and gave it to the robber. *Id.* Another clerk approached Reynaldo Marquez from the store side of the counter, and Reynaldo Marquez then shot the approaching clerk in the torso. *Id.* Reynaldo Marquez jumped back over the counter, exited the store with the money from the register, and entered the white sedan, which departed the area. *Id.*

## II.     PROCEDURAL BACKGROUND

On November 2, 2014, law enforcement arrested Frank Gallegos on an outstanding state court warrant, and he remained in state custody until January 30, 2015. *See* Def. Gallegos' Mot. to Dismiss 3, ECF No. 152; Writ of Habeas Corpus Ad Prosequendum, ECF No. 42. More than a month later, on December 11, 2014, the United States filed a Criminal Complaint against Raymond Castillo, in No. MJ 14-4037, asserting that he conspired with at least one other person to violate the Hobbs Act, 18 U.S.C. § 1951, that resulted in the armed robbery of the 7-Eleven Store and in the shooting of an employee. *See* Criminal Compl., ECF No. 1. Four days later, Defendant Castillo appeared for his detention hearing, waived his preliminary hearing, and was remanded into custody. Clerk's Minutes, ECF No. 8. On December 19, 2014, Defendant Castillo filed a Waiver of Grand Jury Presentment, waiving his right to a grand jury presentation within 30 days of his arrest and continuing the time in which an indictment must be filed against him for a period of 75 days from the date of his arrest. *See* Waiver, ECF No. 14.

On January 16, 2015, Albuquerque Police Department ("APD") Officer Geoffery Stone signed a Criminal Complaint-Arrest Warrant Affidavit for Frank Gallegos for the October 29th Wal-Mart robbery. *See* Criminal Compl. – Aff. for Arrest Warrant, ECF No. 155-1. The Affidavit relied primarily on an unnamed Source of Information who "actively participated" in the Wal-Mart robbery. *Id.* at 2.

On January 21, 2015, the United States filed a five-count Indictment against Defendants Raymond Castillo, Daniel Maestas, Johnny Ramirez, Frank Gallegos, Reyes Lujan, and Henry Lujan for crimes arising from the Wal-Mart robbery. *See* Indictment, ECF No. 16. On February 2, 2015, Frank Gallegos made an initial appearance in federal court on the federal charges and was remanded into federal custody. *See* Clerk's Minutes, ECF No 48. The next day, on February 3, 2015, he was arraigned on the Indictment. *See* Clerk's Minutes, ECF No. 52. On February 4, 2015, Defendant Castillo was arraigned, *see* Clerk's Minutes, ECF No. 57, and the remaining four co-defendants were arraigned six days later, *see* Clerk's Minutes, ECF Nos. 63-66.

On February 23, 2015, Defendant Castillo, joined by all his co-defendants, filed an unopposed motion to continue the March 16, 2015 trial setting in order to investigate the charges. *See* Defs.' Unopposed Mot. to Continue 1-2, ECF No. 82. All co-defendants, except for Frank Gallegos, requested a 120-day continuance. *See id.* at 2. Defendant Gallegos filed an opposed motion to continue trial, asking for only a 30-day, not 120-day, continuance. *See* Def. Gallegos's Mot. to Continue 2-4, ECF No. 83.

The United States filed a Superseding Indictment on February 25, 2015. Superseding Indictment, ECF No. 85. Counts 1-5 arose from the robbery of the Wal-Mart while Count 6 charged Raymond Castillo with the December 7, 2014 conspiracy to interfere with commerce by robbery of the 7-Eleven Store. *See id.* On March 3, 2015, all six co-defendants were arraigned on

the first superseding indictment. *See* Clerk's Minutes, ECF No. 91.  Later that day, the Court held a hearing on the motion to continue trial and vacated the March 16, 2015 trial date. Clerk's Minutes, ECF No. 92.

On February 27, 2015, Defendant Castillo filed a motion for disclosure of identity of and information about confidential informants (ECF No. 90).

On March 5, 2015, the Court entered an order resetting trial on July 20, 2015. Order 4, ECF No. 95.  As grounds to support the 120-day continuance, the Court explained that the defendants needed additional time to review discovery and conduct their own investigation of the evidence against them. *See id.* at 3-4. The Court noted that the number of defendants and charges made the case more complex and time consuming, and that the ends of justice and the best interest of the public weighed in favor of the 120-day continuance under 18 U.S.C. § 3161(h)(7)(A). *See id.* The Court denied Defendant Gallegos' request for a shorter continuance "without prejudice to his right to raise the issue again in the event his case is severed from that of his co-defendants." *Id.* at 4.

On March 26, 2015, Defendant Castillo filed his reply in support of his motion to disclose the identity and information about the Government's confidential informants. *See* Reply, ECF No. 102.

On May 15, 2015, Defendant Frank Gallegos filed a motion to sever the case against him from those of his co-defendants, or alternatively, to order a separate trial of counts 1, 2, and 5. *See* Def. Frank Gallegos' Mot. for Severance, ECF No. 108. On May 20, 2015, Defendant Reyes Lujan filed a separate Motion to Sever Counts and/or Defendants, seeking severance of Count 6. *See* Def. Reyes Lujan's Mot. to Sever, ECF No. 109.

On May 28, 2015, the Government filed a Second Superseding Indictment adding

Reynaldo Marquez to Count 6 and adding Count 7. *See* Second Superseding Indictment 4, ECF No. 112. Specifically, in Count 1, the United States charged Raymond Castillo, Daniel Maestas, Johnny Ramirez, Frank Gallegos, Reyes Lujan, and Henry Lujan with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a) arising from the October 29, 2014 Wal-Mart robbery. *Id.* at 1-2. In Count 2, the Government charged the same six defendants with interference with interstate commerce by robbery and violence arising from the October 29, 2014 theft of a safe filled with currency and other valuables from a Wal-Mart by threatening the employees with firearms in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2. *See id.* at 2. The Government charged Raymond Castillo in Count 3 with using, carrying, and brandishing a firearm during and in relation to a crime of violence, to wit, the October 29, 2014 conspiracy and interference with interstate commerce by robbery of the Wal-Mart, in violation of 18 U.S.C. § 924(c). *Id.* The United States asserts in Count 4 that Daniel Maestas knowingly used and carried a firearm during and in relation to a crime of violence, to wit, the October 29, 2014 conspiracy and interference with interstate commerce by robbery of the Wal-Mart, in violation of 18 U.S.C. § 924(c). *See id.* at 2-3. In Count 5, the Government charged Johnny Ramirez, Frank Gallegos, Reyes Lujan, and Henry Lujan with knowingly aiding and abetting the use and carrying of a firearm during and in relation to a crime of violence for the October 29, 2014 conspiracy and interference with interstate commerce by robbery of the Wal-Mart, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. *Id.* at 3. In Count 6, the United States charged Raymond Castillo and Reynaldo Marquez with interference with interstate commerce by robbery and violence arising from the December 7, 2014 taking of currency from the presence of employees at the 7-Eleven store by threatening them with a firearm in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2. *Id.* In Count 7, the Government charged Reynaldo Marquez with knowingly

using, carrying, brandishing, and discharging a firearm during and in relation to the December 7, 2014 interference with interstate commerce by robbery. *Id.* at 4.

On June 1, 2015, Defendant Raymond Castillo filed a Motion to Sever Defendants and Charges, seeking the severance of his case from that of the other defendants and the severance of Count 6 of the superseding indictment for a separate trial. Def. Castillo's Mot. to Sever 1, ECF No. 118. Defendant Castillo argues that the United States, in its response to the motion to disclose the confidential informants identities, "implicitly admitted that at trial it will offer the statement of at least one of the defendants" and that this statement "inculpates the other defendants." *Id.* at 8. Mr. Castillo argues that severance is necessary to avoid violating his Confrontation Clause rights should the Government offer the statement of a non-testifying co-defendant. *See id.* at 4-8.

On June 1, 2015, the United States filed its response to Defendant Gallegos' motion to sever, agreeing "that Counts 6 and 7 of the Second Superseding Indictment should be severed and tried separately from the remaining counts," but otherwise opposing severance of defendants or counts. United States' Resp. to Def. Gallegos' Mot. to Sever 6, ECF No. 117. The Government explained its charging decisions as follows:

> When the undersigned prosecutors originally charged the case, they were optimistic that they would be able to demonstrate an ongoing conspiracy between all of the Defendants to commit a string of robberies, thus linking robbery of the Walmart with the robbery of the 7-11. It appears, however, that the conspiracies between the robbers were transitory in nature. Moreover, Frank Gallegos is not a member of the same gang as the other robbers and was recruited at the last minute to become the lookout inside the Walmart.
>
> The government acknowledges that it cannot prove that the Walmart robbery and the 7-11 robbery are in "the same series of acts or transactions, constituting an offense or offenses," as required by Federal Rule of Criminal Procedure 8(b). The Court should sever Counts 6 and 7 from the rest and the government will try the two Defendants charged in those Counts separately from the others.

*Id.* at 6-7.

As to Defendant Reyes Lujan's motion to sever, in light of its concession as to severing Counts 6 and 7, the Government contends that Defendant Reyes Lujan's request to be tried separately from Defendant Castillo is moot. *See* United States' Resp. to Def. Reyes Lujan's Mot. to Sever 7, ECF No. 132. Other than agreeing to sever Counts 6 and 7, the Government also opposes Defendant Castillo's motion to try Defendant Castillo separately from the other defendants as to Counts 1 through 5. United States' Resp. to Def. Castillo's Mot. to Sever 6-13, ECF No. 141.

Subsequently, Defendants Henry Lujan, Johnny Ramirez, and Daniel Maestas moved to join in Defendant Castillo's and Defendant Reyes Lujan's motions to sever. *See* Def. Henry Lujan's Mot. for Joinder, ECF No. 147; Def. Ramirez's Notice of Joinder, ECF No. 158; Def. Maestas's Unopposed Mot. for Joinder, ECF No. 162 (seeking to join Def. Castillo's motion to sever). The Court granted the requests. *See* Orders, ECF Nos. 150 and 165.

On June 3, 2015, Defendant Gallegos was arraigned on the Second Superseding Indictment. *See* Clerk's Minutes, ECF No. 120. The following day, Defendants Castillo, Maestas, Ramirez, Reyes Lujan, and Henry Lujan were arraigned. Clerk's Minutes, ECF Nos. 125-29.  Defendant Marquez was arrested and arraigned on the federal charges on June 9, 2015. Clerk's Minutes, ECF No. 134.

On June 11, 2015, all defendants, except Frank Gallegos, filed an Unopposed Motion to Continue Trial Setting and Request for Fed. R. Crim. 17.1 Status Conference (ECF No. 142). The Court set a hearing on July 7, 2015. Notice, ECF No. 151.

Defendant Gallegos filed a Motion to Dismiss Indictment, with Prejudice, for Speedy Trial Act Violation or, in the Alternative, for a Trial within 30 days (ECF No. 152) on June 17,

2015. The next day, Defendant Gallegos filed a Supplement and Request for Evidentiary Hearing as to Motion to Dismiss Indictment, with Prejudice, for Speedy Trial Act Violation or, in the Alternative, for a Trial within 30 days (ECF No. 155). Defendant Gallegos filed a Second Supplement in support of his motion to dismiss the indictment on July 2, 2015 (ECF No. 159). That same day, Defendant Gallegos filed an Application for Subpoenas Duces Tecum Issued Pursuant to F.R.Cr.P. Rule 17(b) and (c) (ECF No. 160). On July 5, 2015, the Government filed its response to Defendant Gallegos' motion to dismiss. United States' Resp., ECF No. 161. Fourteen days have since passed from the filing of the response and Defendant Gallegos failed to file a reply, so briefing on the motion to dismiss is now complete.

On July 7, 2015, this Court held a status conference and heard argument on the parties' positions concerning the motion to continue trial and to declare the case complex. *See* Clerk's Minutes, ECF No. 167. At the hearing, among other things, the Government stated that it intended to file a response to Defendant Gallegos's Application, so briefing on that motion is not yet completed as of the date of filing of this Memorandum Opinion and Order.

On July 8, 2015, the Court entered a Memorandum Opinion and Order granting in part and denying in part Defendant Castillo's motion to disclose information on confidential informants and informing the parties that the Court would hold an *ex parte*, *in camera* hearing on the remaining issues for which the Court reserved ruling. *See* Mem. Op. and Order 18-19, ECF No. 166. The same day, the Court entered an order granting the motion to continue trial, vacating the July 20, 2015 trial date, declaring the case complex for speedy trial purposes, and ordering the parties to submit a proposed scheduling order setting forth all pertinent deadlines. Order, ECF No. 169.

On July 13, 2015, Defendant Henry Lujan filed a Motion and Memorandum to Compel

Investigative Notes and Early Disclosure of Jencks Material (ECF No. 171). Briefing on that motion is not yet complete.

### III.    ANALYSIS

#### A.    Motions for Severance

Federal Rule of Criminal Procedure 8(b) provides that two or more defendants may be tried jointly "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "Joint trials of defendants who are indicted together are preferred because '[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Hall*, 473 F.3d 1295, 1301-02 (10th Cir. 2007) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)).

A court, however, may order separate trials if the joinder of defendants appears to prejudice a defendant. *See* Fed. R. Crim. P. 14(a). The decision whether to grant severance lies within the discretion of the trial court. *United States v. Dirden*, 38 F.3d 1131, 1140 (10th Cir. 1994). In exercising its discretion, a court "must weigh prejudice to the defendant caused by joinder against the 'obviously important considerations of economy and expedition in judicial administration.'" *Id.* (quoting *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir. 1979)). "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. Rather, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

The defendant bears a heavy burden of showing real prejudice in his case sufficient to

warrant severance. *Hall*, 473 F.3d at 1302; *Dirden*, 38 F.3d at 1140-41 (noting that movant must show "more than a better chance of acquittal or a hypothesis of prejudice, he must, in fact, show real prejudice") (quoting *United States v. Youngpeter*, 986 F.2d 349, 353 (10th Cir. 1993)). Moreover, limiting instructions often will cure any risk of prejudice. *Zafiro*, 506 U.S. at 539. The court should consider other remedial measures that will minimize the risk of prejudice. *United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989).

The Government concedes that the Court should sever Counts 6 and 7 from the rest of the case. The Court will therefore jointly try co-defendants Raymond Castillo and Reynaldo Marquez on Counts 6 and 7 in a separate trial. Defendant Reyes Lujan only seeks in his motion a severance of the counts regarding the December 7, 2014 robbery from that of Counts 1 through 5. Defendant Reyes Lujan's motion to sever (ECF No. 109), joined by co-defendants Johnny Ramirez and Henry Lujan, will therefore be granted. The Court will now turn to his co-defendants' requests for a separate trial from the other co-defendants and as to the respective counts for which they are each charged arising from the Wal-Mart robbery.

### 1. Rule 8 permits the joinder of the named co-defendants in Counts 1 through 5

Counts 1 through 5 all arise out of the conspiracy to commit robbery of and the actual act of robbing the Wal-Mart store on October 29, 2014. The Government has charged co-Defendants Raymond Castillo, Daniel Maestas, Johnny Ramirez, Frank Gallegos, Reyes Lujan, and Henry Lujan with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a) arising from the October 29, 2014 Wal-Mart robbery and with interference with interstate commerce by robbery and violence arising from the October 29, 2014 theft of a safe filled with currency and other valuables from a Wal-Mart by threatening the employees with firearms in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2. Because the Second Superseding Indictment

alleges that co-defendants Raymond Castillo, Daniel Maestas, Johnny Ramirez, Frank Gallegos, Reyes Lujan, and Henry Lujan participated in the same act or transaction arising from the robbery of the Wal-Mart, they are properly joined under Rule 8.

### 2. Prejudice does not require severance of co-defendants under Rule 14 as to Counts 1 through 5

#### a. Defendant Frank Gallegos

Defendant Gallegos argues that he should be tried separately because the Government has not alleged that he committed any acts of violence in relation to the Wal-Mart robbery counts for which he is charged (Counts 1, 2, and 5); his degree of culpability is significantly less than that of his co-defendants; and the evidence supporting Counts 3 and 4 in the indictment with which he is not charged would not be admissible against him. He thus asserts that he will suffer impermissible spill-over prejudice from a joint trial. Defendant Gallegos also contends that statements of co-defendant Daniel Maestas would be inadmissible against him under *Bruton v. United States*, 391 U.S. 123 (1968).

#### 1) Spillover Prejudice

Evidence admissible against a co-defendant that would not be admissible against the defendant if he were tried alone may create a serious risk of prejudice sufficient to require severance. *Zafiro*, 506 U.S. at 539.  "For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." *Id.* Prejudice is not shown, however, when the evidence would be admissible at separate trials. *See United States v. Windom*, 19 F.3d 1190, 1198 (7th Cir. 1990); *Lane*, 883 F.2d at 1498 ("If all the evidence in a joint trial of defendants was admitted against each codefendant, no such prejudice could result from the joint trial because the evidence would be precisely as it would at each defendant's separate trial."). "Spillover effect" from evidence that is more damaging against a

co-defendant than that against the defendant is not sufficient to warrant severance.  *See United States v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989).

Based on the record before it, any prejudice that would result from trying Defendant Gallegos with his other co-defendants on Counts 1 through 5 would not prevent a jury from individualizing each defendant. A properly instructed jury will be able to weigh the evidence against Defendant Gallegos separately to determine his culpability in the charged crimes. That the Government alleges Defendant Gallegos was the lookout for the robbery inside the Wal-Mart, rather than the driver of the getaway car or an unarmed lookout in the parking lot, does not significantly lessen his degree of culpability in comparison to his co-defendants. All of their efforts allegedly were in furtherance of the same illegal theft and harm. Even assuming Defendant Gallegos' position is correct and the evidence against him is weaker than his co-defendants, the disparity in evidence is insufficient to warrant a severance. *Cf. United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005) ("[N]either a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is sufficient to warrant severance.") (quoting *United States v. Hack*, 782 F.2d 862, 870 (10th Cir. 1986)). The record does not indicate that the evidence disparity would prevent the jury from making a reliable judgment about the guilt or innocence of Defendant Gallegos and his co-defendants.

Moreover, Defendant Gallegos has not convinced the Court that the evidence necessary to support Counts 3 and 4 regarding the alleged use or display of a firearm by Defendant Castillo and Defendant Maestas would not be admissible in a separate trial against Defendant Gallegos. The Government has charged Defendant Gallegos in Count 2 with interference with interstate

16

commerce by robbery and violence and in Count 5 with knowingly aiding and abetting the use and carrying of a firearm during and in relation to the crime of violence, to wit the conspiracy and interference with interstate commerce. Defendant Gallegos would thus not be prejudiced in a joint trial by the admission of such evidence.

Finally, the risk of prejudice is outweighed by the interests of judicial economy. From the summary of the government's case, it appears that much of the evidence and witnesses against each co-defendant will be the same.  The incident at the Wal-Mart arises from the same course of conduct and involves the same actors.  Separate trials thus will be highly duplicative and a waste of judicial resources. *Cf. Hall*, 473 F.3d at 1302 ("[T]he District Court observed that a joint trial was in the interests of judicial economy because the exact same witnesses and exhibits would be necessary in both trials. We agree. The District Court did not abuse its discretion by denying Mr. Hall's motion to sever.").

**2)** *Bruton*

With respect to Defendant Gallegos' suggestion that *Bruton* issues in this case favor a severance, the Government acknowledges that statements of a non-testifying co-defendant through a third-party witness that implicate the defendant would be inadmissible. *See* United States' Resp. to Def. Gallegos' Mot. to Sever 8, ECF No. 117. The Government suggests that it would instead introduce testimony through one or more witnesses as to the actions the witness(es) observed the other defendants take, and thus no Confrontation Clause issues would arise. *See id.* The United States also has asserted it "plans to introduce the statements of each codefendant as to that codefendant's role in the robbery, and plans to introduce that evidence through agents and police officers who were present when the statements were made." United States' Resp. to Def. Castillo's Mot. to Sever 11, ECF No. 141.

The Confrontation Clause of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the admission of testimonial statements of a witness who did not appear at trial violates the Confrontation Clause, unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. *See id.* at 68-69. A defendant's Confrontation Clause rights are violated when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider the confession only against the co-defendant. *Richardson v. Marsh*, 481 U.S. 200, 201-02 (1987) (citing *Bruton v. United States*, 391 U.S. 123 (1968)). Where, however, a confession is not facially incriminating and becomes so only when linked with evidence later introduced at trial, there does not exist the overwhelming probability that jurors will be unable to obey an instruction that they disregard an incriminating inference. *See id.* at 208.

*Bruton* problems alone do not require severance. *Spears v. Mullin*, 343 F.3d 1215, 1235 (10th Cir. 2003). Where a *Bruton* situation exists, the court may protect the defendant's Sixth Amendment rights by (1) excluding the confession, (2) severing the trial, or (3) redacting the confession to avoid mention or obvious implication of the non-confessing defendant coupled with the use of limiting instructions. *Stanford v. Parker*, 266 F.3d 442, 456 (6th Cir. 2001). Redactions, however, must do more than merely substitute blanks or the word "delete" for a codefendant's name, where a jury would immediately know to whom those blanks referred, in order to avoid *Bruton* problems. *See Gray v. Maryland*, 523 U.S. 185, 193-97 (1998). Severance or exclusion, however, may be required where the admission of the redacted statement distorts the meaning of the statement or excludes information substantially exculpatory of the declarant.

18

*See United States v. Comeaux*, 955 F.2d 586, 590 (8th Cir. 1992).  It is thus up to the court to decide whether the risk of prejudice arising from *Bruton* issues is high enough to warrant severance.  *See Zafiro*, 506 U.S. at 539 (expressly cautioning that risk of prejudice warranting severance could occur where *Bruton* issues arise).

Based on the record before the Court, severance is not necessary. It appears that any statements that the Government seeks to admit through a law enforcement witness will only implicate the defendant making the statement. The Court has other remedies, such as redaction or even exclusion, to protect a non-confessing defendant's rights without resorting to severance.

### 3)   Speedy Trial

Defendant Gallegos opposes the motion for a continuance of trial and demands a speedy trial. He contends the Court should consider the assertion of his speedy trial right in favor of granting a severance. The Speedy Trial Act excludes from the time computation for a defendant a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). Under the Act, any "'reasonable period of delay' excludable as to one defendant is excludable as to his or her codefendants.'" *Dirden*, 38 F.3d at 1137 (quoting *United States v. Tranakos*, 911 F.2d 1422, 1426 (10th Cir. 1990)). The Speedy Trial Act thus contemplates joint trials and does not require severance based solely on a defendant's assertion of his speedy trial rights. *See United States v. Byrd*, 466 F.Supp.2d 550, 551 (S.D.N.Y. 2006) ("Normally, a delay beyond the 70-day period attributable to joinder with one or more co-defendants is not a ground per se for a severance because the Speedy Trial Act contains an express exclusion of a 'reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted.'"). Where a delay

causes prejudice, then the delay may require a severance. *See* Fed. R. Crim. P. 14(a). Defendant Gallegos has not shown, however, sufficient prejudice from delaying his case in order to try him with his codefendants, and as discussed *supra*, the efficiencies of holding a joint trial in this case and avoiding the duplication of witnesses, expense, and consumption of court time weigh in favor of a joint trial.

In sum, Defendant Gallegos has not met his heavy burden of showing real prejudice to his case to overcome the presumption of a joint trial. The strong interests of judicial economy outweigh any risk of prejudice that may occur in this case, and any *Bruton* issues that may arise can be cured in other ways. As the Tenth Circuit stated: "[W]hen two or more people commit a criminal act and are later jointly indicted, they can usually expect to be tried together." *Dirden*, 38 F.3d at 1141. The Court therefore will not sever Defendant Gallegos' trial from that of his co-defendants and will not sever Counts 1, 2, and 5 from Counts 3 and 4.

### b.  Defendants Raymond Castillo, Henry Lujan, Johnny Ramirez, and Daniel Maestas

Defendant Castillo, joined by co-defendants Henry Lujan, Johnny Ramirez, and Daniel Maestas, argues severance is required based on *Bruton* issues and inconsistent defenses.

#### 1)  *Bruton*

Defendant Castillo states that "besides Mr. Castillo, all of [his co-defendants] talked with police and incriminated themselves and the others in varying degrees." Def. Castillo's Mot. to Sever 2, ECF No. 118. Defendant Castillo argues that the co-defendants' statements in this case cannot be redacted to satisfy *Bruton* and *Gray* in a way that would not distort their meaning, and that redaction would deprive him of substantial exculpatory evidence, and thus, his Confrontation Clause rights would be violated in a joint trial. This Court is not convinced that in this case a codefendant's confession could not be redacted in a way that satisfies *Bruton*

concerns. The Tenth Circuit has stated that, if a confession does not facially incriminate the co-defendant, then it may be admitted with a limiting instruction, even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the co-defendant.  *See United States v. Verduzco-Martinez*, 186 F.3d 1208, 1215 (10th Cir. 1999) (citing *United States v. Green*, 115 F.3d 1479, 1484 (10th Cir. 1997)).  Moreover, even if redacted confessions did create a *Bruton*/*Gray* problem, the Court could remedy the issue by excluding those particular statements. Nor has Defendant Castillo shown that redaction of any statements will deny him of their exculpatory value.

### 2)    Inconsistent Defenses

The Tenth Circuit requires a three-step inquiry to determine whether a defendant will be prejudiced by a joint trial because he and a co-defendant have mutually exclusive defenses: (1) whether the two defenses are so antagonistic as to be mutually exclusive; (2) whether there is a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable determination of guilt or innocence; and (3) if a defendant shows the first two factors, the trial court must weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration. *United States v. Jones*, 530 F.3d 1292, 1304 (10th Cir. 2008). To establish that the trials must be severed, "the conflict between the defendants' defenses must be such that the jury, in order to believe the core of one defense, must *necessarily* disbelieve the core of the other." *Id.* (quoting *United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007)).

Defendant Castillo asserts that, because he did not confess, he has a defense that the others do not: that he was not there. Defendant Castillo argues that he will have to argue that each confession is accurate as to the confessing co-defendants and point out that he was not

21

implicated in the confession, but each confessing co-defendant will have to argue that his confession was untrue and should not be believed. Defendant Castillo contends that the defenses are incompatible with one another, requiring severance.

The Court disagrees. Defendant Castillo's defense that he was not at or involved in the robbery does not require him to argue that his co-defendant's confessions are true. He can argue that he was not implicated in the confessions without taking a position on the accuracy or believability of the confessions. A jury could simultaneously believe that Defendant Castillo was not involved in the robbery, and that the confessions were untrue and that his codefendants also were not involved in the robbery. Neither Defendant Castillo, nor co-defendants Henry Lujan, Johnny Ramirez, and Daniel Maestas, have shown that a jury, in order to believe the core of his own defense, must *necessarily* disbelieve the core of the others' defenses. Severance is therefore not necessary. *Cf. Jones*, 530 F.3d at 1304 ("Mr. Wright's guilt was not, in itself, a viable legal defense for Ms. Jones, and it was not an indispensable component of her theory of the case. Indeed, the 'core' of Ms. Jones's defense-that she did not act knowingly or voluntarily with respect to any of the alleged acts-did not necessarily depend on Mr. Wright's guilt…. In our view, the jury could have simultaneously believed that the government's witnesses were lying about Mr. Wright's involvement in the bank fraud conspiracy and that Ms. Jones did not knowingly commit bank fraud.").

Nor has Defendant Castillo or his co-defendants shown that a jury could not reliably make a determination of guilt or innocence as to each of them in a joint trial. They have not met their burden of showing sufficient prejudice in a joint trial. Finally, the interests of judicial economy strongly weigh in favor of a joint trial in this case.

### B.      Motion to Dismiss Indictment based on Speedy Trial Act

Defendant Gallegos argues that the United States' decision to join the 7-Eleven and Wal-Mart robberies and to twice supersede the indictment resulted in substantial pretrial delay that should not be chargeable to Mr. Gallegos. He contends that the United States purposefully and erroneously joined defendants and/or counts for strategic reasons, suggesting that the Government impermissibly superseded the indictment to avoid the expiration of Defendant Castillo's 75-day waiver. He also argues that the delay in this case is caused by the United States' piecemeal disclosures, done to generate anxiety among defendants to try to recruit a cooperating witness. Defendant Gallegos argues that the Government should be held responsible for 102 days non-excludable delay from February 2, 2015, to May 15, 2015, as well as the delay following the filing of his motion to sever because Defendant Gallegos would not have been compelled to file the motion had the Government not misjoined defendants on February 25 and again on May 28, 2015. Defendant Gallegos thus asserts that the indictment should be dismissed with prejudice for violation of the Speedy Trial Act, or alternatively, that his trial should begin within 30 days of the date his motion was filed.

The Speedy Trial Act ("the Act") requires the trial of a defendant to "commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Section 3161(h) of the Act contains exclusions of time from the computation of the 70-day deadline.

Time under the Act is excludable upon a finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Ends-of-justice continuances are to be used rarely, but may be used to manage particularly complex or difficult cases. *See United States v. Margheim*, 770 F.3d 1312,

1318 (10th Cir. 2014). In weighing the ends-of-justice factors, a court must look to the defendant's interest in a speedy trial; the court may not weigh the interests of co-defendants. *See United States v. Theron*, 782 F.2d 1510, 1513 (10th Cir. 1986). Instead, subsection (h)(6) applies to exclusions of time because co-defendants are in the case. *Id.*

Section 3161(h)(6) provides for the exclusion of a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). The purpose behind the subsection (h)(6) exclusion "is to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." *Theron*, 782 F.2d at 1514. "In such cases the courts generally have held that extensions sought by one codefendant toll the limitations period of all." *Id.*

The question when examining a subsection (h)(6) exclusion is whether the delay attributable to the co-defendant is "reasonable." *United States v. Vogl*, 374 F.3d 976, 983-84 (10th Cir. 2004). A court must look at all relevant circumstances, including the following three factors: (1) whether the defendant is free on bond; (2) whether the defendant zealously pursued his speedy trial rights; and (3) whether the circumstances further the purpose behind the exclusion to accommodate the efficient use of prosecutorial and judicial resources in a single trial of multiple co-defendants. *Margheim*, 770 F.3d at 1319. "Where the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses, a single trial is preferred." *Vogl*, 374 F.3d at 984 (quoting *United States v. Tranakos*, 911 F.2d 1422, 1426 (10th Cir. 1990)).

Section 3161(h)(1)(D) excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such

motion." Subsection (h)(1)(H) also excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." Consequently, if a motion is one that does not require a hearing, the Speedy Trial Act excludes the time through the period of "prompt disposition," but only if the period of time does not exceed 30 days from the date the motion is taken "under advisement" by the court. *Henderson v. United States*, 476 U.S. 321, 329 (1986). The "under advisement" period begins when the court receives all the papers it reasonably expects. *See id.* at 328-29; *Margheim*, 770 F.3d at 1322. In contrast, when a pretrial motion requires a hearing, Congress intended "to exclude from the Speedy Trial Act's 70-day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'" *Henderson* , 476 U.S. at 330.

In this case, there are co-defendants, all of whom have been properly joined in the indictment as to their respective counts in Counts 1 through 5; no severance has been granted as to Counts 1 through 5; and the time for trial has not run as to Defendant Gallegos' co-defendants because one or more of those co-defendants have sought each continuance for reasons that fall within the "ends of justice" exclusion. *Cf. Theron*, 782 F.2d at 1514 (holding that exclusion for extensions sought by codefendants under like circumstances tolled limitations period of all for a reasonable period of delay). Defendant Gallegos attempts to undermine the grounds supporting this Court's orders granting the motions to continue trial. This Court did not grant its ends-of-justice continuances based on the needs of the Government to conduct a post-indictment investigation. Defendant Gallegos's co-defendants sought the continuances, both for discovery review and, significantly, to conduct their own investigations and formulate trial strategies. The Court's continuances have been grounded on the needs of Defendant Gallegos's co-defendants to

adequately prepare for trial. Many of the Government's discovery obligations are not triggered until close to, or even is some cases, during trial. Because the co-defendants have moved to continue trial, discovery deadlines linked to the trial date have likewise been extended. That the Defendants have not yet received the full discovery to which, by the time of trial, they will be entitled does not establish that the United States is improperly controlling the timing of trial by delayed disclosure of discovery. For the reasons set forth in this Court's orders continuing trial, the periods of delay resulting from the continuances sought by Defendant Gallegos's co-defendants serve the ends of justice and the continuances outweigh the best interest of the public and the Defendants in a resolution of this case.

Moreover, applying the subsection D tolling periods to the pre-trial motions filed by Defendant Gallegos and his co-defendants results in significant excludable time such that the 70-day deadline for trial has not passed and the Speedy Trial Act has not been violated. Defendant Castillo filed a motion for disclosure on February 27, 2015, which tolls the clock through the conclusion of the hearing on that matter. This Court on July 8, 2015, ruled that it would hold an *ex parte* hearing on the motion, *see* Mem. Op. and Order 18, ECF No. 166, and since that time, it held the hearing and denied the motion for disclosure on July 22, 2015, *see* Order, ECF No. 177. Defendant Castillo's motion for disclosure thus tolled the clock such that the Speedy Trial Act has not been violated. Additionally, during the time Defendant Castillo's motion for disclosure was pending, numerous other pre-trial motions were filed by Defendant Gallegos and his co-defendants. The Court need not go into detail as to the excludable time for each of them, given that the clock is properly tolled as to Defendant Gallegos' co-defendants based on the ends-of-justice exclusion and the pendency of the motion for disclosure. *Cf. Dirden*, 38 F.3d at 1137 ("Delay resulting from the filing of any pretrial motion, from the filing of the motion through the

conclusion of the hearing on, or prompt disposition of, such motion is excluded. Additionally, Dirden's codefendant Lewis also filed a number of pretrial motions, each of which tolled the seventy-day period as to Dirden.") (internal quotations and citations omitted).

Turning to the reasonableness of the delay attributable to the co-defendants, the Court finds that the period of delay is reasonable in this case. With respect to the first factor, Defendant Gallegos has been held in custody, which weighs in his favor. As for the second factor, Defendant Gallegos has pursued his speedy trial rights, but the zealousness of that pursuit does not completely weigh in his favor. On February 23, 2015, Defendant Gallegos agreed to a 30-day trial continuance, although not the full 120-day continuance requested by his co-defendants. Nevertheless, Defendant Gallegos waited until May 15, 2015, to file his motion to sever his case from that of his defendants, briefing on which was not complete until June 12, 2015. His motion to sever in part relied on a Speedy Trial Act argument, and Defendant Gallegos filed a motion to dismiss the indictment for violations of the Speedy Trial Act on June 17, 2015. The Court has awaited full briefing on the Speedy Trial Act argument before ruling on the merits of Defendant Gallegos' motion to sever in order to ensure it has all necessary information for its decision. The zealousness of pursuit of speedy trial rights factor thus only weighs somewhat in Defendant Gallegos' favor. The third factor, however, weighs strongly in favor of the Government and warrants a finding of reasonableness. Here, the evidence against Defendant Gallegos will largely be the same as against his co-defendants and will involve the same witnesses. The efficient use of judicial and prosecutorial resources weighs in favor of a single trial.

Even if the Government improperly joined Counts 6 and 7, Defendant Gallegos is properly joined in Counts 1, 2, and 5 with his co-defendants. The reasons for the continuances sought by his co-defendants pertain to discovery issues and investigative needs pertinent to the

Wal-Mart robbery and the motions to sever also request severing co-defendants and counts pertaining to Counts 1 through 5. Delay while these pre-trial matters were resolved would have occurred even if the Government had not joined Counts 6 and 7. The Court therefore need not conduct an evidentiary hearing as to the Government's motivations for charging Counts 6 and 7 with Counts 1 through 5, because the result of any such hearing would not change this Court's decision that Defendant Gallegos's speedy trial rights have not been violated.

**IT IS THEREFORE ORDERED** that:

1.      Defendant Frank Gallegos' Motion for Severance of Defendant Gallegos and for a Separate, Speedy Trial of Counts 1, 2 and 5 (**ECF No. 108**) is **GRANTED in part and DENIED in part**. The Court will **GRANT** the request to sever Counts 6 and 7 for a separate trial, but will otherwise **DENY** Defendant Gallegos' requests to sever counts or defendants.

2.      Defendant Reyes Lujan's Motion to Sever Counts and/or Defendants (**ECF No. 109**) is **GRANTED**.

3.      Defendant Raymond Castillo's Motion to Sever Defendants and Charges (**ECF No. 118**) is **GRANTED in part and DENIED in part**. The Court will **GRANT** the request to sever Counts 6 and 7 for a separate trial, but will otherwise **DENY** the request to sever counts or defendants.

4.      Defendant Gallegos' Motion to Dismiss Indictment, with Prejudice, for Speedy Trial Act Violation or, in the Alternative, for a Trial within 30 days (**ECF No. 152**) is **DENIED**.

5.      The Court will have one trial of Counts 1 through 5 with all named Defendants therein jointly tried, and will have a separate trial of Counts 6 and 7 with co-defendants

Raymond Castillo and Reynaldo Marquez jointly tried.


_____
**UNITED STATES DISTRICT JUDGE**