THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                      No. Cr. 15-0205 JH

RAYMOND CASTILLO,
DANIEL MAESTAS,
JOHNNY RAMIREZ,
FRANK GALLEGOS,
REYES LUJAN,
HENRY LUJAN,
REYNALDO MARQUEZ,

     Defendants.

## MEMORANDUM OPINION AND ORDER

On December 14, 2015, Defendant Raymond Castillo filed a Motion to Dismiss Count 3 of the Second Superseding Indictment (ECF No. 257). Defendant Henry Lujan filed a motion to join (ECF No. 258) in the entirety of Defendant Castillo's motion to dismiss. The Court granted the motion to join. Order, ECF No. 268. [1] Defendant Reynaldo Marquez filed a Motion to Dismiss Count 7 of the Second Superseding Indictment (ECF No. 260), the grounds for which are essentially identical to the motion filed by Defendant Castillo. The Court, having considered the motions, arguments, the Second Superseding Indictment, the relevant law, and otherwise being fully advised, concludes that Hobbs Act Robbery is a crime of violence under 18 U.S.C.

---

[1] On December 22, 2015, Defendant Frank Gallegos filed an "Unopposed Amended Motion to Join in Entirety Raymond Castillo's Motion to Dismiss Count 3 (Doc. 257) as Applied to Count 5 of the Second Superseding Indictment (Doc. 113)." Def. Gallegos' Am. Mot. to Join, ECF No. 262. This Court granted his motion to join, Order, ECF No. 266, but Mr. Gallegos has since entered a plea, mooting his motion, *see* Plea Agreement, ECF No. 307. Although Henry Lujan moved to join in Raymond Castillo's motion to dismiss Count 3, Henry Lujan is not charged in Count 3; rather, he is charged in Count 5, like Frank Gallegos. Second Superseding Indictment 3, ECF No. 113. Consequently, the Court construes Defendant Henry Lujan's motion to join as a motion to dismiss Count 5 on the same grounds as Defendant Castillo moves to dismiss Count 3.

§ 924(c)(3)(A) and will deny Defendant Marquez's motion to dismiss Count 7. The Court, however, determines that Conspiracy to Commit Hobbs Act Robbery under 18 U.S.C. § 1951(a) is not a crime of violence under the terms of either § 924(c)(3)(A) or (B). Counts 3 and 5 of the Superseding Indictment list both Hobbs Act Robbery and Conspiracy to Commit Hobbs Act Robbery under 18 U.S.C. § 1951(a) as the crimes of violence supporting the § 924(c) charges. The Court will give the parties an opportunity to address the appropriate remedy based on this determination before ruling on Defendant Castillo's and Defendant Henry Lujan's motion to dismiss.

## I.        Factual and Procedural Background

Counts 1 through 5 of this case arise from the robbery of an Albuquerque Wal-Mart store on or about October 29, 2014. Second Superseding Indictment 1-3, ECF No. 113. As relevant here, according to the Government, it intends to present at trial evidence that Raymond Castillo used a black semiautomatic pistol during the course of the robbery, forcing a security guard into the store at gunpoint and holding employees and patrons at gunpoint, and that co-Defendant Daniel Maestas had a silver or chrome handgun. *See* Mem. Op. and Order 2-3, ECF No. 166. The Government contends that, upon exiting, Raymond Castillo pointed his firearm in the direction of the security guard, and a frame-by-frame viewing of the surveillance video shows what appears to be a spent shell casing above and to the rear of the slide of his firearm at approximately 12:03:42 a.m., a direction consistent with the direction a casing will travel when ejected from most semiautomatic pistols after having been fired. *See id.* The Government asserts that Daniel Maestas also approached the truck with a firearm in his left hand and that the only individuals with the opportunity to fire the shots were the men they identify as Raymond Castillo and Daniel Maestas. *See id.*

Counts 6 and 7 of the Second Superseding Indictment arise from the December 7, 2014 armed robbery of an Albuquerque 7-Eleven store. Superseding Indictment 3-4, ECF No. 113. According to the United States, it will present evidence at trial that, after Raymond Castillo went into the store to conduct surveillance, Defendant Reynaldo Marquez entered the store holding what ballistics later determined to be a .45 caliber semiautomatic pistol, he pointed the firearm at the clerk behind the counter, took the money from the clerk, and when another clerk approached him from the side counter, Defendant Marquez shot the approaching clerk in the torso before fleeing. *See* Mem. Op. and Order 5-6, ECF No. 166.

On May 28, 2015, the Government filed a Second Superseding Indictment in this case. Second Superseding Indictment, ECF No. 113. In Count 1, the United States charged Raymond Castillo, Daniel Maestas, Johnny Ramirez, Frank Gallegos, Reyes Lujan, and Henry Lujan with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a) arising from the October 29, 2014 Wal-Mart robbery. *Id.* at 1-2. In Count 2, the Government charged the same six defendants with interference with interstate commerce by robbery arising from the October 29, 2014 theft of a safe filled with currency and other valuables from the presence of employees of the Wal-Mart, against their will by means of actual and threatened force, violence, and fear of injury to their persons, by threatening the employees with a firearm in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2. *See id.* at 2. The Government charged Raymond Castillo in Count 3 with having "knowingly used, carried, and brandished a firearm during and in relation to a crime of violence for which the defendant may be prosecuted in a court of the United States: to wit, conspiracy, as charged in Count 1 of this indictment, and interference with interstate commerce by robbery, as charged in Count 2 of this indictment," in violation of 18 U.S.C. § 924(c). *Id.* The United States asserts in Count 4 that Daniel Maestas knowingly used and

carried a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). *See id.* at 2-3. In Count 5, the Government charged Johnny Ramirez, Frank Gallegos, Reyes Lujan, and Henry Lujan with on or about October 29, 2014, having "knowingly aided and abetted the use and carrying of a firearm during and in relation to a crime of violence for which the defendants may be prosecuted in a court of the United States: to wit, conspiracy, as charged in Count of this indictment, and interference with interstate commerce by robbery, as charged in Count 2 of this indictment," in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. *Id.* at 3.

In Count 6, the United States charged Raymond Castillo and Reynaldo Marquez with interference with interstate commerce by robbery arising from the December 7, 2014 taking of currency from the presence of employees at the 7-Eleven store against their will by means of actual and threatened force, violence, and fear of injury to their persons by threatening them with a firearm in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2. *Id.* The Government charged Reynaldo Marquez in Count 7 with on or about December 7, 2014, having "knowingly used, carried, brandished, and discharged a firearm during and in relation to a crime of violence for which the defendant may be prosecuted in a court of the United States: to wit, interference with interstate commerce by robbery, as charged in Count 6 of this indictment," in violation of 18 U.S.C. § 924(c). *Id.* at 4. The Court subsequently severed Counts 6 and 7 of the Second Superseding Indictment for trial from Counts 1 through 5. *See* Mem. Op. and Order 28-29, ECF No. 185.

Defendant Castillo has moved to dismiss Count 3 of the Second Superseding Indictment; Defendant Lujan seeks to dismiss Count 5; and Defendant Marquez asks to dismiss Count 7. As grounds therefor, Defendants Castillo and Lujan argue that Counts 3 and 5 do not state an offense and must be dismissed because the Conspiracy to Commit a Hobbs Act Robbery (Count

4

1) and the Hobbs Act Robbery (Count 2) underlying the § 924(c) offenses alleged in Counts 3 and 5 categorically fail to qualify as crimes of violence within the meaning of 18 U.S.C. § 924(c)(3)(A), the "force clause," and 18 U.S.C. § 924(c)(3)(B), the "residual clause," is unconstitutionally vague under *Johnson v. United States*, __ U.S. __, 135 S.Ct. 2551 (2015). Defendant Marquez makes the similar argument that Count 7 does not state an offense and must be dismissed because the Hobbs Act Robbery charge (Count 6) underlying the § 924(c) offense alleged in Count 7 categorically fails to qualify as a crime of violence within the meaning of the "force clause," and the "residual clause" is unconstitutionally vague.

## II.  Legal Analysis

As relevant here, Section 924(c) states:

> any person who, during and in relation *to any crime of violence* … for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i)   be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii)  if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A) (italics added). Section 924(c)(3) defines "crime of violence" as a felony offense that

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. 924(c)(3). Courts generally refer to Section 924(c)(3)(A) as the "force clause" and

Section 924(c)(3)(B) as the "residual clause." The Court will examine Defendants' arguments as to each clause in turn.

### A.  The Force Clause

Hobbs Act Robbery and Conspiracy to Commit Hobbs Act Robbery are the predicate crimes of violence at issue here. Under the Hobbs Act:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, *by robbery* or extortion or attempts *or conspires so to do*, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a) (emphasis added).

Hobbs Act Robbery is defined by 18 U.S.C. § 1951(b), which provides in pertinent part:

> (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, *by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property*, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1) (italics added).

### 1.  Hobbs Act Robbery

Defendants contend that Hobbs Act robbery categorically does not qualify as a crime of violence under Section 924(c)(3)(A) because "the offense can be committed by putting someone in fear of future injury to his person or property, which does not require the use, attempted use, or threatened use of 'violent force.'" Def. Castillo's Mot. 3-4, ECF No. 257; Def. Marquez's Mot. 3, ECF No. 260. "Whether a crime fits the § 924(c) definition of a 'crime of violence' is a question of law." *United States v. Morgan*, 748 F.3d 1024, 1034 (10th Cir. 2014) (affirming district court's decision to instruct jury that crime of kidnapping or conspiracy to kidnap are

crimes of violence). "The answer requires examination of the legal elements of the crime, not an exploration of the underlying facts." *Id.* (citing *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004)).

To determine whether a specific crime is a "crime of violence," Defendants argue that a court must employ a "categorical approach," in which it looks only to the statutory definition of the offense, not to the particular facts disclosed by the record. *United States v. Serafin*, 562 F.3d 1105, 1107-08 (10th Cir. 2009). When the statute of the predicate crime contains "alternative elements—some of which do not require the threatened use of physical force," the Tenth Circuit uses a modified categorical approach to consider whether the predicate crime is a crime of violence, in which it examines charging documents and documents of conviction. *Cf. United States v. Hood*, 774 F.3d 638, 645 (10th Cir. 2014) (applying modified categorical approach in determining whether state conviction was a "violent felony" under Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)). In the post-trial context, the Tenth Circuit has applied the categorical approach in determining whether a crime is a crime of violence under § 924(c)(3). *See Serafin*, 562 F.3d at 1107-08.[2]

Section 924(c)(3)(A) defines "crime of violence" as a felony that has an element "the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(c)(3)(A). A "threat" is a "communicated intent to inflict physical or other harm on any person or on property." Black's Law Dictionary 1480 (6th ed. 1990). The term means "an avowed present determination or intent

---

[2] Several district courts have questioned whether the use of the categorical approach is appropriate on a *pre-trial* motion to dismiss in Section 924(c)(3) cases. *See, e.g., United States v. McDaniels*, No. 1:15-cr-171, __ F.Supp.3d __, 2015 WL 7455539, *4 (E.D. Va. 2015) ("In sum, the categorical approach does not apply on a pre-trial motion to dismiss an indictment, and therefore the question whether the commission of a particular Hobbs Act robbery qualifies as a § 924(c) crime of violence is properly submitted to a jury properly instructed as to the definition of a crime of violence set forth in § 924(c)(3)."); *United States v. Checora*, No. 2:14cr457, __ F.Supp.3d at __, 2015 WL 9305672, *1-2 (D. Utah 2015) (collecting cases). Although the Government notes that Counts 3, 5, and 7 of the Second Superseding Indictment do not contain the word "future," *see* United States' Resp. 7, ECF No. 263, it does not otherwise challenge Defendants' assertion that the categorical approach applies here. In light of this apparent concession and the language in *Serafin*, the Court will apply the categorical approach in this case. *See Checora*, 2015 WL 9305672 at *3 ("[W]hile expressing reservations as to its validity on the pretrial context, the court will apply the categorical approach to the determination of whether second-degree murder and attempted murder qualify as predicate crimes of violence.").

to injure presently or in the future." *Id.* Consequently, as a temporal matter, the "threatened use of physical force" crime-of-violence element encompasses the Hobbs Act Robbery taking by means of a "fear of injury" in the "future," as well as "immediate[ly]."

Turning to the meaning of "physical force," Defendants contend that *Johnson v. United States*, 559 U.S. 133, 140 (2010), requires that the physical force be "strong" and "violent force." Indeed, the Supreme Court and Tenth Circuit have defined the term "physical force" under the ACCA as "violent force," or "force capable of causing physical pain or injury to another person." *Hood*, 774 F.3d at 645 (quoting *Johnson*, 559 U.S. at 140) (analyzing whether Oklahoma felony conviction for pointing firearm at person qualified as "violent felony" for purposes of ACCA). The Supreme Court in *Johnson* stated that the term "physical" refers to force "exerted by and through concrete bodies" -- distinguishing physical force from "intellectual force or emotional force." *Johnson*, 559 U.S. at 138 (holding that Florida's felony battery offense did not meet force clause of ACCA because statute could be satisfied by slightest touch on shoulder, and thus was not violent).

It is not clear that the Supreme Court would likewise define "physical force" under § 924(c)(3). Unlike the ACCA, the "crime of violence" definition in § 924(c)(3) refers to "physical force" and does not additionally require a "violent felony." *See United States v. Pena*, No. 15-cr-551, __ F.Supp.3d __, 2016 WL 690746, at *4 (S.D.N.Y. Feb. 11, 2016) (explaining textual differences between Section 924(c)(3) and ACCA). Even assuming *Johnson*'s standard applies to § 924(c)(3), this Court is unconvinced *Johnson* created such a heightened threshold for the necessary amount of force to preclude Hobbs Act robbery categorically as a crime of violence. *Johnson* recognized that strong force requires more than slight touching. The Hobbs Act fear is that of "injury" to his or her "person or property." The force necessary to cause an

injury to the body or property of another is of a greater degree than the minimal or slightest unwelcome touching that could constitute an assault under the Florida statute at issue in *Johnson*.

Defendants rely on the Fourth Circuit case *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), in support of their argument that the act of placing another in fear of physical injury does not require the use or threatened use of "violent force" against another. In *Torres-Miguel*, the Fourth Circuit considered under the categorical approach whether a California Penal Code § 422(a) felony state conviction for "willfully threaten[ing] to commit a crime which will result in death or great bodily injury to another person" constituted a prior "crime of violence" justifying a sentencing enhancement under United States Sentencing Guidelines ("USSG") § 2L1.2(b)(1)(A)(ii), which included in its crime-of-violence definition "any other offense … that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* at 166-68. The Fourth Circuit reasoned that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of a crime of violence." *Id.* at 168. The *Torres-Miguel* court explained that a crime may result in death or serious injury without involving the use of physical force, giving examples such as threatening to poison another and crimes of gross negligence or reckless endangerment, like leaving an infant near a pool. *See id.* at 168-69.

To support its argument, the Fourth Circuit relied on the Tenth Circuit case of *United States v. Perez-Vargas*, 414 F.3d 1282 (2005). In *Perez-Vargas*, the Tenth Circuit examined whether the Colorado third degree assault statute is a crime of violence under § 2L1.2 where Colorado defined the crime as occurring  when the defendant "knowingly or recklessly **causes bodily injury** to another person or with criminal negligence he **causes bodily injury** to another person by means of a deadly weapon." *Id.* at 1285 (quoting C.R.S. § 18-3-204) (emphasis added

by Tenth Circuit). The defendant argued that the Guidelines focused on the means by which an injury occurs, while the state statute focused on the result of a defendant's conduct, in other words, the consequences of conduct, however applied. *See id.* In concluding that the assault statute did not necessarily include the use or threatened use of "physical force," the Tenth Circuit noted "several examples of third degree assault that would not use or threaten the use of physical force: recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Id.* at 1286-87.

Defendants argue that, because Hobbs Act Robbery can be accomplished by putting another in fear of physical injury by threatening to poison the person, to expose that person to hazardous chemicals, to place a barrier in front of the person's car, or to lock the person up in a car on a hot day, all of which do not require "violent force," the predicate crime cannot constitute a "crime of violence." Def. Castillo's Mot. 7, ECF No. 257. The Supreme Court, however, has subsequently rejected the assertion that an indirect application of force between a defendant and victim does not qualify as using physical force for purposes of the crime of violence determination. *See United States v. Castleman*, 134 S.Ct. 1405, 1414-15 (2014).

In *Castleman*, the Supreme Court considered whether the Tennessee crime of having "intentionally or knowingly cause[d] bodily injury to" the mother of his child had an element "the use … of physical force," as required to be deemed a "misdemeanor crime of domestic violence." *Id.* at 1409. The defendant argued successfully before the district court that the Tennessee statute did not so qualify because one could cause bodily injury without violent contact, for example, by deceiving the victim to drink poison. *See id.* In holding that "a 'bodily injury' must result from 'physical force,'" the Supreme Court explained:

But as we explained in *Johnson*, "physical force" is simply "force exerted by and through concrete bodies," as opposed to "intellectual force or emotional force." 559 U.S., at 138, 130 S.Ct. 1265. And the common-law concept of "force" encompasses even its indirect application. "Force" in this sense "describ[es] one of the elements of the common-law crime of battery," *id.*, at 139, 130 S.Ct. 1265, and "[t]he force used" in battery "need not be applied directly to the body of the victim." 2 W. LaFave, Substantive Criminal Law § 16.2(b) (2d ed. 2003). "[A] battery may be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance," such as a laser beam…. It is impossible to cause bodily injury without applying force in the common-law sense.

Second, the knowing or intentional application of force is a "use" of force. Castleman is correct that under *Leocal v. Ashcroft*, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." Brief for Respondent 37. But he errs in arguing that although "[p]oison may have 'forceful physical properties' as a matter of organic chemistry, ... no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink," *ibid.* The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim. *Leocal* held that the "use" of force must entail "a higher degree of intent than negligent or merely accidental conduct," 543 U.S., at 9, 125 S.Ct. 377; it did not hold that the word "use" somehow alters the meaning of "force."

*Id.* at 1414-15.

Numerous lower courts have concluded that *Castleman*, although construing 18 U.S.C. § 922(g)(9), applies equally to § 924(c)(3) because its holding pertains to what it means to "use" physical force. *See United States v. Williams*, No. 13-cr-00764, 2016 WL 97732, at *2 (N.D. Cal. Jan. 7, 2016) ("While *Castleman* addresses a conviction under 18 U.S.C. § 922(g), which requires a lower level of physical force than section 924(c)(3), this particular aspect of *Castleman* concerns not the level of physical force required under section 922(g), but rather what it means to 'use' physical force for the purposes of the statute. I see no material difference between section 922(g) and section 924(c)(3) in this regard."); *United States v. Morgan*, No. 14–

11

cr–20610, 2015 WL 9463975, at *2 n. 3 (E.D.Mich. Dec. 18, 2015) (concluding that *Castleman* implicitly rejected rationale of *Torres-Miguel*); *United States v. Cruz–Rivera*, No. 3:15-CR-00486, 2015 WL 6394416, at *3-4 (Oct. 21, 2015) (explaining that, after *Castleman*, *Torres-Miguel* and *Perez-Vargas*'s respective analyses regarding hypotheticals of poisoning and intentionally placing a barrier in front of a car causing an accident as not constituting use or threatened use of physical force were no longer good law) (on appeal). Defendants' theoretical examples of placing a person in fear of injury by means of indirect harm – poisoning, exposing to hazardous chemicals, placing a barrier in front of a car, locking the person up in hot car, abandoning the person without food or shelter – constitute the threatened use of physical force, because they involve the knowing and intentional threatened use of force capable of causing physical pain or injury.

As for Defendants' fanciful example of a doctor taking property from the person against his will by threat of withholding medicine or some other such threatened act of omission, the Court is not convinced that such actions would constitute Hobbs Act Robbery, because the "fear of injury" means fear of injury from the use of force. The fear of injury required is that which is calculated to create the impression that resistance will be met with physical force. *See Pena*, 2016 WL 690746, at *8-11 (holding, based on text, history and context of Hobbs Act, that "fear of injury" means fear of injury from use of force); *United States v. Clarke*, __ F.Supp.3d __, 2016 WL 1110306, *5 (D. Md. Mar. 22, 2016) (noting that, if threats to devalue some intangible economic interest "do not constitute 'use, attempted use, or threatened use of physical force against the person or property of another' within the meaning of § 924(c)(3)(A), neither do they constitute 'actual or threatened force, or violence, or fear of injury ... to [a] person or property' within the meaning of the Hobbs Act"). *Cf. United States v. Davis*, 2015 WL 8311538, at *3

(E.D. Mich. Dec. 9, 2015) (carjacking by intimidation involves threatened use of physical force).

Accordingly, this Court agrees with the courts that have rejected the same arguments and concluded that a Hobbs Act robbery amounts to a "crime of violence" under Section 924(c)(3)(A). *See Pena*, 2016 WL 690746, at *8-12 (concluding Hobbs Act Robbery is crime of violence under force clause because Hobbs Act "fear of injury" should be construed as fear of injury from use of force in light of context of statute and that "fear" in common law was often used in place of "intimidation," meaning the threat of use of force); *United States v. Lenzy*, 2016 WL 1019712, at *3 (N.D. Ga. Feb. 4, 2016) (concluding Hobbs Act Robbery is crime of violence under force clause); *United States v. Crawford*, No. 3:15–CR–070, 2016 WL 320116, at *3 (N.D. Ind. Jan. 27, 2016) (same and citing 14 cases holding same); *United States v. Tsarnaev*, Cr. No. 13-10200, __ F.Supp.3d at __, 2016 WL 184389, at *14-18 (D. Mass. Jan. 15, 2016) (same); *Morgan*, 2015 WL 9463975, at *7 (same); *McDaniels*, No. 1:15-cr-00171, __ F.Supp.3d __, 2015 WL 7455539, at *5-6 (E.D. Va. Nov. 23, 2015) (same); *United States v. Melgar-Cabrera*, No. CR 09-2962 WJ, 2015 U.S. Dist. LEXIS 145226 (D.N.M. Aug. 24, 2015) (on appeal).[3]

## 2. Hobbs Act Conspiracy to Commit Robbery

Turning to the Conspiracy to Commit Hobbs Act Robbery offense, Defendants contend that conspiracy is charged under Section 1951(a), which does not contain an overt act requirement, and because it can be accomplished without an act, it does not have as an element the use, attempted use, or threatened use of physical force. Def. Castillo's Reply 9, ECF No. 275. The Government's arguments pertain to Hobbs Act Robbery and it did not separately argue that

---

[3] Notably, although not addressing the specific issue Defendants raise here, a number of circuits have stated that Hobbs Act robbery is a crime of violence. *See, e.g., United States v. Morales-Machuca*, 546 F.3d 13, 21 (1st Cir. 2008) (stating that Hobbs Act violation is crime of violence for purposes of § 924(c)(1)(A)); *United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993) ("Robbery indisputably qualifies as a crime of violence. *See* 18 U.S.C. § 1951(b)(1) (containing element of 'actual or threatened force, or violence')."). *See also United States v. Farmer*, 73 F.3d 836, 842 (8th Cir. 1996) (explaining that Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person of another").

Hobbs Act Conspiracy to Commit Robbery contains the necessary elements under the force clause.

Defendants rely on the case of *United States v. Edmundson*, No. PWG-13-15, __ F.Supp.3d __, 2015 WL 9582736 (D. Md. Dec. 30, 2015), in which the court concluded that Hobbs Act conspiracy is not a crime of violence under the force clause because the conspiracy offense did not require the defendant to commit an overt act in furtherance of the conspiracy. *Id.* at *2. *Edmundson* in turn relied on *United States v. White*, 571 F.3d 365, 368-69 (4th Cir.2009), *abrogated on other grounds by Johnson v. United States*, 135 S.Ct. 2551 (2015). In *White*, the Fourth Circuit considered whether a conviction under North Carolina law for conspiracy to commit robbery with a dangerous weapon constituted an ACCA violent felony. *White*, 571 F.3d at 368. Because an overt act is not an essential element of the criminal conspiracy under North Carolina law, *see id.*, the Fourth Circuit concluded that the state conspiracy offense "does not have 'as an element the use, attempted use, or threatened use of physical force against the person of another.'" *Id.* at 368-69 (holding, nonetheless, that the North Carolina law was a violent felony under residual clause).

The parties have not cited, nor could the Court find through its own research, a Tenth Circuit case directly addressing whether Section 1951 Hobbs Act Conspiracy to Commit Robbery falls within the force clause. The Tenth Circuit, however, has considered whether a conviction under New Mexico law for conspiracy to commit armed robbery constitutes a crime of violence under Section 924(e). *United States v. King*, 979 F.2d 801, 801-03 (1992). In *King*, the Tenth Circuit explained that New Mexico's conspiracy offense does not require an overt act; instead, it is complete when the felonious agreement is reached. *Id.* at 802. In then considering whether the conspiracy charge "has as an element the use, attempted use, or threatened use of

physical force against the person of another," the Tenth Circuit reasoned:

> Clearly neither actual nor attempted use of force is required for conviction under conspiracy law; the object of conspiracy statutes is to make it unnecessary for law enforcement officials to wait for such acts to occur before intervening. Whether the intent to commit a violent felony constitutes a "threatened use of physical force" is more problematic. Read broadly, the formed intent of the conspirators does constitute a[n] inchoate "threat" to both the impending target of the contemplated felony and to society as a whole. In this context, however, "threatened use of physical force" means both an intent to use force and a communication of that intent. *Cf. Black's Law Dictionary* 1480 (6th ed. 1990) (defining "threat" as "[a] communicated intent to inflict physical or other harm on any person or on property"). Because the crime of conspiracy in New Mexico is complete upon the formation of the intent to commit a felony, and does not require that any action be taken on that intent, the elements of a conspiracy to commit a violent felony do not include the threatened use of physical force. We therefore hold that a conspiracy conviction does not qualify as a "violent felony" under the first statutory definition of § 924(e)(2)(B)(i).

*Id.* at 803.

Subsequently, the Tenth Circuit examined whether conspiracy to commit carjacking, as charged under Section 371, was a crime of violence under Section 924(c)(3). *See United States v. Brown*, 200 F.3d 700, 705-06 (10th Cir. 1999). In its analysis, the Tenth Circuit first acknowledged that the crime of carjacking is a crime of violence, and noted that several courts have held that a conspiracy to commit a federal crime of violence is a crime of violence for purposes of Section 924(c). *Id.* at 706.[4] The defendant argued, however, that the Tenth Circuit foreclosed the same approach in *King. See id.* The *Brown* court readily distinguished *King*: "The *King* panel applied New Mexico law which focuses solely on the unlawful agreement and does not require an overt act, thus, the underlying substantive offense could not be considered." *Id.* In contrast, the Tenth Circuit explained that conspiracy under Section 371 has as an element an overt act in furtherance of the object of conspiracy, which "plainly invites consideration of the

---

[4] As explained more *infra*, the authority cited by the Tenth Circuit relied on the residual clause in Section 924(c)(3)(B) in concluding that conspiracy to commit a federal crime of violence is a crime of violence. *See, e.g., United States v. Elder*, 88 F.3d 127, 128-29 (2d Cir. 1996); *United States v. Harper*, 33 F.3d 1143, 1149 n.5 (9th Cir. 1994) (relying on *United States v. Mendez*, 992 F.2d 1488, (9th Cir. 1993)).

underlying substantive offense—here § 2119—because the overt act must be evaluated with reference to the object of the conspiracy." *Id.* It then concluded that conspiracy under 18 U.S.C. § 371 to commit carjacking was a crime of violence under § 924(c)(3)(B). *Id.* ("[A]t a minimum, an agreement to accomplish the statutory elements of carjacking necessarily involves a substantial risk of physical force against the person or property of a victim, § 924(c)(3)(B).").

In *United States v. Gore*, the Fifth Circuit considered whether a Texas law for conspiracy to commit aggravated robbery was a violent felony under the ACCA. *See* 636 F.3d 728, 729-30 (2011). Even though the conspiracy offense had an overt act requirement, one could violate the law by way of an overt act that did not amount to physical force against the person of another or the attempted or threatened use of force. *See id.* at 730 & n.11. Citing *White* and *King* with approval, the Fifth Circuit concluded that conspiracy to commit aggravated robbery did not come within the definition of "violent felony" under the force clause of the ACCA. *See id.* at 730 & n.12.

The Tenth Circuit has recently expressed its continued approval of *King*'s analysis regarding the force clause:

> *King* considered whether conspiracy to commit armed robbery was a violent felony under the ACCA. *See* 979 F.2d at 801–02. The ACCA definition of violent felony has two alternatives. A crime can be a violent felony if it "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another" or if it "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). We first considered whether the conspiracy charge satisfied (i) and *properly concluded that it did not because the offense did not require commission of an overt act and the conspiratorial agreement itself did not require the use or attempted use of force or a communicated threat.*

*United States v. Trent*, 767 F.3d 1046, 1058 at n. 2 (10th Cir. 2014) (emphasis added).

The circuits are divided on whether Section 1951 Hobbs Act Conspiracy has an overt act

16

requirement, but the majority to have directly considered the issue have concluded Hobbs Act Conspiracy under § 1951(a), unlike Section 371, does not require proof of an overt act to convict. *Compare United States v. Salahuddin*, 765 F.3d 329, 338 (3d Cir. 2014) ( holding that Hobbs Act conspiracy under § 1951 does not require overt act); *United States v. Monserrate–Valentin*, 729 F.3d 31, 62 (1st Cir. 2013) (same); *United States v. Pistone*, 177 F.3d 957, 960 (11th Cir. 1999) (concluding that government is not required to allege and prove overt act in prosecution for conspiracy to obstruct commerce in violation of § 1951); *United States v. Clemente*, 22 F.3d 477, 480 (2d Cir.1994) ("In order to establish a Hobbs Act conspiracy, the government does not have to prove any overt act."); *United States v. Ocasio*, 750 F.3d 399, 409 n. 12 (4th Cir. 2014) ("Although the elements of those offenses are similar, a § 371 conspiracy requires proof of an overt act, while a § 1951 conspiracy does not."); *with United States v. Corson*, 579 F.3d 804, 810 n. † (7th Cir. 2009) (observing circuit split and noting that some Seventh Circuit decisions listed overt act as an element of Hobbs Act conspiracy, "without discussion of the issue"); *United States v. Box*, 50 F.3d 345, 349 (5th Cir.1995) (stating that jury must find overt act to convict for Hobbs Act conspiracy). Given the lack of an express requirement of an act in furtherance of the conspiracy within § 1951's statutory language, the Court will follow the reasoning of the First, Second, Third, Fourth, and Eleventh Circuits that have concluded the Hobbs Act Conspiracy statute does not require proof of an overt act. *Cf. Whitfield v. United States*, 543 U.S. 209, 213 (2005) ("[W]here Congress had omitted from the relevant conspiracy provision any language expressly requiring an overt act, the Court would not read such a requirement into the statute.").

Section 1951 Hobbs Act Conspiracy also does not contain an element that the conspiratorial agreement itself requires the use or attempted use of force or a communicated

threat. Consequently, in light of the Tenth Circuit's analysis in *King* and *Brown*, Hobbs Act Conspiracy to Commit Robbery does not constitute a "crime of violence" under the force clause of Section 924(c)(3). The Court thus must consider whether Hobbs Act Conspiracy to Commit Robbery is a crime of violence under the residual clause.

### B.  The Residual Clause

In *Johnson v. United States*, the Supreme Court held that the residual clause of the ACCA violates the Constitution's guarantee of due process. 135 S.Ct. 2551 (2015). Defendants contend that *Johnson* applies to the parallel residual clause in Section 924(c)(3)(B), rendering the clause void for vagueness. The Government argues that the combination of factors that convinced the Supreme Court to invalidate the ACCA's residual clause is not present in this case and counsels against extending *Johnson* to Section 924(c)(3)(B). It also contends that Defendants cannot make a facial challenge to the statute as void for vagueness without first showing the law is vague as applied to them.

Before considering the constitutionality of the residual clause, the Court, to avoid the unnecessary resolution of constitutional issues, will first consider whether Hobbs Act Conspiracy to Commit Robbery satisfies the residual clause definition. The Tenth Circuit has not directly addressed this question. In *King*, however, the Tenth Circuit concluded that conspiracy to commit armed robbery under New Mexico law did not constitute a crime of violence under the residual clause of the ACCA because, looking only to the conspiracy elements, which did not include an overt act requirement, the state conspiracy law did not necessarily present circumstances that created a high risk of violent confrontation inherent in a completed armed robbery. *See King*, 979 F.2d at 802-04. Although noting that a "strong argument can be made that a conspiracy to commit a violent felony presents a serious *potential* risk of physical injury to

another, and is therefore itself a 'violent felony' for purposes of 18 U.S.C. § 924(e)," *id.* at 803, the Tenth Circuit nonetheless determined that the state conspiracy law did not present a serious potential risk of physical injury to another by relying on *United States v. Strahl*, 958 F.2d 980 (10th Cir.1992). In *Strahl*, the Tenth Circuit held that attempted burglary was not a violent felony under the ACCA because attempted burglary offenses do not necessarily present circumstances that create the high risk of violent confrontation inherent in a completed burglary. *King*, 979 F.2d at 804 (citing *Strahl*, 958 F.2d at 986).

Subsequent cases seemingly called into question the vitality of *King*'s residual clause analysis. The Tenth Circuit in *Brown* declined to extend *King* to the offense of § 371 conspiracy to commit carjacking, finding *King* "easily distinguishable" because the conspiracy statute at issue in *King* did not require an overt act for conviction. *Brown*, 200 F.3d at 706. The Tenth Circuit stated that an overt act allows for consideration of the object of the conspiracy in determining whether the conspiracy by its nature involved a substantial risk that physical force would be used against the person or property of a victim. *See id.* More recently, the Tenth Circuit has noted in dicta that the holding in *King* "on the applicability of the residual clause is no longer good law." *Trent*, 767 F.3d at 1058 n. 2. The Tenth Circuit explained that the *King* case relied on *Strahl*, which was later overruled by the Supreme Court in *James v. United States*, 550 U.S. 192, 198 (2007), itself *overruled by Johnson*, 135 S.Ct. 2551. *Trent*, 767 F.3d at 1058 n.2.[5]

In *James*, the Supreme Court rejected the argument that the ACCA categorically excludes attempt offenses from the scope of the residual clause. *James*, 550 U.S. at 198-200. The

_____

[5] The First and Fifth Circuits have also expressly disagreed with the *King* decision. *See, e.g.*, *United States v. Gore*, 636 F.3d 728, 741-42 (5th Cir. 2011) (disagreeing with Tenth Circuit's conclusion in *King* that conspiracy to commit armed robbery did not present serious risk of potential injury under residual clause of ACCA and noting that Tenth Circuit did not have benefit of Supreme Court's intervening decisions interpreting that clause); *United States v. Turner*, 501 F.3d 59, 68 (1st Cir. 2007) ("We are unpersuaded by *King*, which, aside from being at odds with our authority and the great weight of authority from other circuits, does not consider the importance of the object of the conspiracy, which under our case law is a critical inquiry.").

attempted burglary law of Florida at issue required an overt act directed toward entering or remaining in the structure in order to sustain a conviction. *See id.* at 202-03 & n.2. The Court explained: "The pivotal question, then, is whether overt conduct directed toward unlawfully entering or remaining in a dwelling, with the intent to commit a felony therein, is 'conduct that presents a serious potential risk of physical injury to another.'" *Id.* at 203. In answering that question, the Supreme Court reasoned that the risk of burglary arises not from wrongfully entering property, but from the possibility of a face-to-face confrontation between the burglar and an innocent third party, and attempted burglary poses the same risk if an innocent person interrupts the would-be burglar at the doorstep. *See id.* at 203-04. The Supreme Court noted that it did not need to consider whether state attempt laws that could be satisfied by preparatory conduct that did not pose the same risk of violent confrontation, such as faced by the Tenth Circuit in the *Stahl* case, would satisfy the residual clause. *See id.* at 205-06 & n.4.

The Tenth Circuit has since resolved the issue left open by *James* – whether a conviction for an inchoate crime encompassing preparatory conduct is a violent felony – and concluded that it is not under the ACCA. *United States v. Fell*, 511 F.3d 1035, 1041-44 (10th Cir. 2007)). In *Fell*, the Tenth Circuit, after applying the framework in *James*, held that a prior Colorado state conviction for conspiracy to commit second degree burglary is not a violent felony under the ACCA. *See id.* at 1036. The Tenth Circuit explained that the Supreme Court in *James*, in applying the categorical approach to an inchoate crime, rejected the approach the Tenth Circuit had adopted in *Strahl*, instead holding that the categorical approach did not require that every conceivable factual offense covered by a statute necessarily must present a serious risk of injury before deeming it a violent felony. *See id.* at 1039-40. However, the Tenth Circuit recognized that the *James* Court also did not look only to the elements of the underlying substantive crime,

as it had in *Brown*, even though the Florida crime had an overt act element. *See id.* at 1040.

"Instead, it focused its analysis on 'whether the conduct encompassed by the *elements of the offense*, in the ordinary case, presents a serious potential risk of injury to another.'" *Id.* (quoting *James*, 127 S.Ct. at 1597). In then applying the *James* analysis, the Tenth Circuit reasoned:

> Having considered the elements of conspiracy to commit second degree burglary under Colorado law in light of the applicable law, we conclude it is not a violent felony for purposes of the ACCA. Although there is an overt act element, the act need not be directed toward the entry of a building or structure. Once an agreement to burglarize a property is reached, overt acts in furtherance of the collective objective will typically include attenuated conduct such as purchasing tools and supplies, arranging transportation to and from the building, and obtaining plans or maps. Usually such acts can be committed a considerable distance from the targeted property and ordinarily without raising any suspicions on the part of third parties. Thus, many overt acts sufficient to sustain a Colorado conspiracy conviction create no risk of a violent confrontation between the defendant and an individual interacting with the conspirator while the overt act is being committed.

> Although the collaborative efforts of two or more individuals to commit second degree burglary admittedly increase the potential risk to the social order because of the increased likelihood of additional and more complex criminal activity, we cannot conclude this elevated risk to society is comparable to the risk of physical harm to others inherent in the enumerated crime of burglary. The increased criminal activity will often consist only of more elaborate and otherwise lawful preparatory acts, none of which place the conspirators anywhere near the vicinity of the targeted building, or will involve tangential criminal acts that, while unlawful, present no potential risk of physical harm to other persons.

*Id.* at 1044.

The Tenth Circuit applied this same analysis in *United States v. Martinez*, 602 F.3d 1166 (10th Cir. 2010), holding that Arizona's attempted second-degree burglary statute, even if it required a substantial step toward commission of the crime, "would still prohibit attenuated conduct, and attempted burglary would therefore still be disqualified from being a violent felony under *Fell*" because "[o]ne can take a substantial step toward committing a crime without being on the verge of committing it." *Id.* at 1172. In so holding, the Tenth Circuit noted that, although

the *Strahl* analysis "may be questioned" after *James*, "*Fell* makes clear that their holdings survived *James*." *Id.* at 1173. The *Trent* dicta is thus in some tension with the *Martinez* and *Fell* cases, both of which directly and more extensively analyzed the issue of the proper crime-of-violence analysis for an inchoate crime.

This Court concludes, based on the reasoning in *King*, *Fell*, and *Martinez*, that under Tenth Circuit law, Conspiracy to Commit Hobbs Act Robbery under § 1951(a) does not constitute a crime of violence under the residual clause of § 924(c)(3). Although those cases arose under the ACCA, the language of the residual clause of Section 924(c)(3) is even narrower and compels this Court to conclude that the lack of an overt act element in the charged conspiracy offense disqualifies the offense from being a crime of violence within the meaning of the residual clause, even though the object of the conspiracy itself is a crime of violence.

Section 924(c)(3) contains a temporal clause in which the "substantial risk that physical force against the person or property of another may be used *in the course of committing the offense*." 18 U.S.C. § 924(c)(3)(B). The ACCA does not require that the risk occur in the course of the offense, but rather examines whether the felony "otherwise involves conduct that presents a serious potential risk of physical injury to another." The Tenth Circuit has expressed its view that the crime-of-violence definition in Section 924(c)(3)(B) is "*narrower*" than the definition in USSG § 4B1.2, which "is congruent with the ACCA definition." *Serafin*, 562 F.3d at 1109 (emphasis in original). The Tenth Circuit emphasized that, unlike USSG § 4B1.2, analysis of Section 924(c)(3)(B)'s residual clause requires "not only focus on (1) whether an offense, by its nature, raises a substantial risk of physical force being employed, but also on (2) whether the risk of force actually arises *in the course of committing the offense*, and not merely as a probable, or even possible, result." *Id.* (emphasis in original).

Courts interpreting Section 924(c)(3)(B) post-*Johnson* that have concluded that Section 924(c)(3)(B) is not void for vagueness, have placed significant reliance on the temporal distinction. *See*, *e.g.*, *United States v. Taylor*, 814 F.3d 340, 377 (2016); *United States v. Dervishaj*, __ F.Supp.3d __, 13-CR-0668, 2016 WL 1019357, at \*7 (E.D.N.Y. Mar. 14, 2016). As the Sixth Circuit explained in upholding Section 924(c)(3)(B) on a vagueness challenge:

> Similarly, § 924(c)(3)(B) does not allow courts to consider conduct occurring after the crime has been committed. In *Johnson*, the Court explained that "the inclusion of burglary and extortion among the enumerated offenses preceding the residual clause confirms that" a court could evaluate the risk of injury arising after the crime has been completed, since "[t]he act of making an extortionate demand or breaking and entering into someone's home does not, in and of itself, normally cause physical injury." 135 S.Ct. at 2557. Section 924(c)(3)(B)'s requirement that physical force "be used *in the course of* committing the offense" permits no similar inquiry into conduct following the completion of the offense: under that statute, the force must be used and the risk must arise in order to effectuate the crime. Thus, unlike the ACCA residual clause, § 924(c)(3)(B) does not allow courts to consider "physical injury [that] is remote from the criminal act," a consideration that supported the Court's vagueness analysis in *Johnson*.

*United States v. Taylor*, 814 F.3d 340, 377 (2016).

Conspiracy to Commit Hobbs Act Robbery under § 1951(a) is completed at the time of the agreement. *See infra*. Although it is tempting to give consideration to the underlying crime that the conspirators intend to commit when determining the potential risk of force against a person or property that may be used subsequently should they carry out acts in furtherance of the conspiracy, as other circuits have done,[6] under Section 924(c)(3)(B) and Tenth Circuit law, the Court must limit its analysis to the risk of force used in the course of committing the offense of conspiracy, not the risk of physical force arising after the conspiracy crime has been completed.

---

[6] *See*, *e.g.*, *Turner*, 501 F.3d at 67 ("We conclude that conspiracy under the Hobbs Act constitutes a 'crime of violence' for purposes of 18 U.S.C. § 924(c)."); *United States v. Phan*, 121 F.3d 149, 152-53 (4th Cir. 1997) ("A Hobbs Act conspiracy to commit robbery, however, is a separate crime of violence providing its own predicate for § 924(c)(1) liability."); *Elder*, 88 F.3d at 129 ("[A] Hobbs Act conspiracy to commit robbery is by definition a conspiracy that involves a substantial risk that physical force may be used against the person or property of another.").

The lack of an overt act requirement in the charged conspiracy and the narrower temporal scope of Section 924(c)(3)(B) compel the conclusion that the charged conspiracy is not by its nature a crime of violence. *Cf. United States v. Whitson*, 597 F.3d 1218, 1220, 1222–23 (11th Cir. 2010) (per curiam) (holding that a conspiracy to commit "'strong arm' robbery" was not a crime of violence within the meaning of the career offender enhancement of USSG § 4B1.1 because an overt act was not necessary for the conviction and "[n]o violence or aggression is associated with forming an agreement"). Accordingly, the Court does not need to reach the issue of whether the residual clause is void for vagueness after *Johnson*.

### III.   Conclusion

Hobbs Act Robbery constitutes a crime of violence under the force clause of Section 924(c)(3)(A). That is the only underlying crime of violence charged in Count 7, so Defendant Marquez's motion to dismiss Count 7 will be denied.

Hobbs Act Conspiracy to Commit Robbery under § 1951(a), however, does not constitute a crime of violence under either the force or residual clauses of Section 924(c)(3). The Government charges in Counts 3 and 5 both Hobbs Act Robbery, which constitutes a crime of violence, and Hobbs Act Conspiracy to Commit Robbery, which does not. A conviction under Section 924(c) may stand on proof of one crime of violence.

Rule 7(d) provides: "Upon the defendant's motion, the court may strike surplusage from the indictment." Fed. R. Crim. P. 7(d). A court may "strike from an indictment allegations which are both independent of and unnecessary to the offense on which a conviction ultimately rests, provided nothing is thereby added to the indictment." *United States v. Sullivan*, 919 F.2d 1403, 1436 (10th Cir. 1990). The Fifth Amendment grand jury clause, however, "permits substantive amendment of an indictment only by resubmission to the grand jury." *Id.* A court may not add an

24

offense or broaden the bases for conviction. *Id.* When language of an indictment goes beyond alleging elements of the offense, it is surplusage and need not be proved. *United States v. Smith*, 838 F.2d 436, 439 (10th Cir. 1988) (quoting *United States v. Harper*, 579 F.2d 1235, 1239 (10th Cir. 1978)).

The parties have not addressed the appropriate remedy under the circumstances now facing the Court. The Court will address this issue at the Call of the Calendar set for Thursday, May 5, 2016 at 1:30 p.m. The Court will also require the parties to submit supplemental briefs addressing the remedy issue in light of this Memorandum Opinion and Order on or before 5:00 p.m. on Wednesday, May 4, 2016. The Court will therefore reserve ruling on Defendant Castillo's and Henry Lujan's motions to dismiss Counts 3 and 5, respectively, until it considers the forthcoming briefs and arguments.

**IT IS THEREFORE ORDERED** that

1. Defendant Reynaldo Marquez's Motion to Dismiss Count 7 of the Second Superseding Indictment (**ECF No. 260**) is **DENIED**.

2. The Court will **RESERVE RULING** on Defendant Castillo's Motion to Dismiss Count 3 of the Second Superseding Indictment (**ECF No. 257**).

3. The parties must file their briefs on the remedy issue in light of this Court's ruling **on or before 5:00 p.m. on Wednesday, May 4, 2016**. The Court will address this issue at the Call of the Calendar set for **Thursday, May 5, 2016 at 1:30 p.m.**

_____
**UNITED STATES DISTRICT JUDGE**